Statement of the Case.
NIOHOLLS, J.
Plaintiff brought this suit for damages against defendants, as members •of the state board of pharmacy, established by Act No. 66, p. 74, of the General Assembly of the year 1888. He claims the sum of $3,884 for attorney’s fees and losses in business and exemplary damages from defendants in solido, by reason of their refusal to register as a pharmacist under the act mentioned, without examination, or the exhibition of a diploma, until ordered to do so by the judgment of the Supreme Court in the suit of State ex rel. Monnier v. Board of Pharmacy, 110 La. 99, 34 South. 159.
Plaintiff alleged that defendants, as members of the board, voted in favor of the said action taken by it. He avers that the action of the defendants in so doing was tortious, willful, and malicious.
Defendants set up various exceptions, such as no cause of action and the prescription of one year. They pleaded the general issue, and averred that their action was under and by virtue of a resolution of the board adopted in 1895, and that the then Attorney General of the state advised them that in his judgment the resolution was within the power of the board.
There was judgment in the district court in favor of the defendants, and plaintiff appealed.
Opinion.
The positions taken by plaintiff, as shown, by the brief filed on his behalf, were:
(1) A mistake as to his duty and honest intention will not excuse a public officer who neglects or refuses to do a ministerial act which the law requires absolutely to be done by him. A. & B. Enc. of Law, vol. 23, p. 377.
A public officer depriving one of his legal rights, through “novel but unsound principles,” cannot claim to be acting in good faith. All the more is he liable when the highest law officer in the state advises him that his action is, at best, doubtful. The act complained of was a continuous one. The plea of prescription of one year does not apply. *168 Drews v. Williams, 50 La. Ann. 579, 23 South. 897.
And those urged by the defendants were:
(1) When the defendants in a suit for damages, being public officers acting in the conscientious, even if mistaken, discharge of their duties, under the advice of competent counsel and of the highest law officer of the state, are admittedly without malice, they cannot be made liable in damages as for a tort.
(2) A plaintiff, an admitted violator of the law, now invoked by him for 14 years, lacks clean hands for recovery of damages against those charged with its execution, who conscientiously, even though mistakenly, but on the highest legal advice, refuse his claim for registry thereunder.
(3) Damages can be recovered only when the act complained of is the proximate cause. Brice v. Jones, 5 La. Ann. 635, 636.
(4) Attorney’s fees, if recoverable at all from the opposite party, are not so where the party has acted in good faith, except in certain cases specified in law.
(5) The prescription of one year from the. date of the alleged wrong is the prescription applicable to the cause at bar. Talle v. De Monasterio, 48 La. Ann. 1235, 20 South. 687; Edwards v. Turner, 6 Rob. 382; Crow v. Sheriff, 45 La. Ann. 1227, 12 South. 122; Brown v. Clingman, 47 La. Ann. 25, 16 South. 564.
It was the duty of the plaintiff to have done everything in his power to minimize the damages resulting (if any) from the situation. Levy v. Carondelet Canal Co., 34 La. Ann. 180; Tardos v. Railroad Co., 35 La. Ann. 16; Beers v. Board of Health, 35 La. Ann. 1132, 48 Am. Rep. 256; Insurance Company v. Werlein, 42 La. Ann. 1046, 8 South. 435, 11 L. R. A. 361.
The items of damages claimed by the plaintiff are set out in a bill annexed to plaintiff’s petition as follows:
Attorney’s fees for the institution and prosecution of suit No. 67,-743, the sum of................. $1,000 00
The costs of printing briefs filed in Supreme Court in said suit No. 67,743 ........................ 14 50
Expenses paid by plaintiff to competent persons, pharmacists, druggists, or apothecaries, at different times, to supply and fill plaintiff’s position as pharmacists in Robin’s Pharmacy, where'he was employed from beginning of said suit, including also the board of said respective parties, which was a part of the compensation or pay for said place, all as is shown in detail as to dates, names, and amounts, etc., in statement filed as part hereof, the sum of..................... 516 25
Amount of'actual loss of salary and board which plaintiff would have earned had he been in the actual pursuit of his occupation or employment in said place, during pendency of said suit, at a salary of $30 per month, and his board and lodging which he would have had, had he been able to discharge the duties of said position, $20.00 or $50.00 per month, for all of which he lost by reason of the acts and conduct of said defendants....... 516 25
Actual loss and damages resulting from the uneasiness, anxiety, and distress of mind caused to petitioner by the aforesaid willful, unlawful, and malicious acts and conduct of defendants, which were in flagrant contempt of the law.... 1,000 00
Punitory ,or exemplary damages for which each one of the defendants in this suit should be condemned to pay for their willful, malicious, and unlawful acts and conduct in the premises ....................... 1,000 00'
$4,047 00
The district court assigned the following reasons for its judgment:
“The evidence in this case failed to establish any malice on the part of the board of pharmacy at the time when they refused to register the plaintiff. On the contrary, it shows that they acted on the advice of two Attorney Generals of the state and of special counsel. However erroneous that advice might have been, and however mistaken they were, I am not of the opinion that they are liable in damages for their action. Public officers who, in good faith and in acting in the line of their duties, honestly mistake the extent Of their powers and the nature of their duties, are not liable for the damages caused by them in the honest discharge of those duties, however much they may be in error.
“Judgment for defendants.”
*170 The act for the violation of whose provisions in his favor plaintiff relies on is Act No. GO, p. 74, of 1888, entitled:
“An act to regulate the practice of pharmacy, to regulate the sale of compounded medicines, drugs, preparations and prescriptions, to regulate the sale of poisons, to create a state board of pharmacy and to regulate the fees and emoluments thereof, to prevent the practice of pharmacy by unauthorized persons, and to provide for the trial and punishment of violators •of the provisions of this act by fine or imprisonment.”
The first section of the act provides that it shall hereafter be unlawful for any other than a registered pharmacist to compound medicines, drugs, or chemicals, or to institute or conduct any apothecary or drug store, or pharmacy shop for compounding drugs, medicines, or chemicals, or for any person to be employed therein, or placed in charge thereof, for the purpose of compounding drugs or chemicals under prescription* or otherwise.
The second section provides that any person 24 years of age shall be entitled to registration as a duly registered pharmacist on exhibiting to the board of pharmacy a diploma from any college or school of pharmacy, in Europe or America, of good and respectable standing, the status of the institution as to respectability and standing to be judged and approved by said board, together with the affidavit of the applicant, stating his age, nativity, and that he is the bona fide holder of the diploma, and the person named therein, and that he is a regular graduate or alumnus of said institution, or, in case that said applicant shall produce no diploma as hereinabove set forth, it shall be sufficient for him to present an affidavit that he has had four years’ practical experience in the manipulation and compounding of physicians prescriptions under the supervision of a registered pharmacist, who shall also attest the truth of the said affidavit by swearing thereto, if said registered pharmacist be alive and resident in the state of Louisiana, and said affidavit shall set forth the age of the applicant, the place of his nativity, and when and where he has practiced pharmacy, said affidavits to be preserved on file by the board of pharmacy as a part of its records.
The third section provides that the foregoing provisions of this act shall not apply to or affect any person who shall be engaged in the actual preparation, compounding, and dispensing of medicines or drugs and apothecary business as proprietor of the same, or as qualified assistant therein, at the time of the passage of this act, except in so far as relates to registration and fees provided in section 5. A qualified assistant engaged in the business at the time of the passage of this act is one who has not had less than two years’ practical experience in the preparations, compounding, and dispensing of medicines or drugs in the drug and apothecary business. All other actual assistants actually engaged in the business at the time of the passage of this act shall, upon the completion of a like term of two years’ experience, be entitled to registration as qualified assistants without examination, provided that nothing contained in this act shall, in any manner whatever, interfere with the business of any registered practitioner of medicine, nor in any way prevent him from administering or supplying his patients with such drugs and medicines as he may deem fit and proper, nor shall it interfere with the making and dealing in proprietary medicines, popularly called “patent” medicines, nor prevent storekeepers from dealing in and selling the commonly used standard medicines and poisons, if all such standard medicines and medicines included in this section conform in all respects to the requirements of section 7. Nor shall this act apply to any planter furnishing medicines to hands in his employment or leasing lands from him.
The fourth section provides that, in case the board of pharmacy shall have reason to doubt the truth of the allegations of any affidavit made under the provisions of the *172 foregoing secttori, it shall have the right to examine into and hear evidence thereon, and if convinced of the falsity thereof it shall have the right to refuse registration, subject to the right of the applicant to appeal to the courts by mandamus, provided that false swearing in an affidavit hereinbefore mentioned shall be deemed perjury, and liable to punishment as in other cases under existing laws.
The sixth section provides that the Governor shall appoint the board of pharmacy, consisting of nine reputable practicing pharmacists doing business in the state, who shall serve for four years from the date of their appointment. Any vacancy shall be filled for the unexpired term by the Governor’s appointment. Said board shall elect a president and an officer to be known as the secretary and treasurer, and, in addition to its duties in holding examinations and granting certificates, it shall report to the prosecuting officer of the state of Louisiana all persons violating the provisions of this act. It shall report annually to the Governor of the state, upon the condition of pharmacy in the state, any recommendations for the improvement of its practice, as well as a record of the proceedings of the board during the year, and the names of all pharmacists duly registered under this act, and the fees collected under the provisions of this act shall be applied to the payment of the expenses of the board, in such manner as it shall direct.
The eighth section provides that any person offending against any provisions of this act shall be deemed guilty of a misdemeanor against the state of Louisiana, and shall be prosecuted before any court of criminal jurisdiction, and if adjudged guilty, shall pay a fine of not less than $50, nor more than $100, and in default of payment thereof shall be imprisoned in the parish jail for not more than 30 days.
On the trial of the case plaintiff introduced in evidence the judgment of the Supreme Court, entitled State ex rel. Monnier v. Board of Pharmacy, reported in 110 La. 99, 34 South. 159, affirming that of the district courts which commanded the board of pharmacy, through its proper officers, to register the-relator (Jules Monnier) as a pharmacist, and to’ issue him a certificate of said registration in accordance with the terms and provisions Of Act No. 66, p. 74, of 1888.
On the trial of the mandamus case the relator, Monnier, introduced in evidence a a letter signed by the .secretary of the board, dated August 4, 1901, saying:
“Tour application for registration by virtue of having had experience prior to the act of 1888 was presented to the committee on exami- . nation at their meeting on August 2nd, and same was referred to the board for action. The board had previously ruled that experience-prior to the act would not be taken as sufficient to register a man without examination.”
This letter was followed by another of date December 2d, saying:
“That at a meeting of the board of pharmacy, held on November 30th, 1901, your application,, showing experience in the manipulation and compounding of physicians’ prescriptions from the years 1882 to 1888, was presented to the board, and you were refused a certificate.”
The mandamus proceeding instituted by Monnier was filed on the 13th of May, 1902. It was decided against the board of pharmacy, charging it with violation of a ministerial duty imposed upon it by law. An alternative writ of mandamus and service of the writ was made upon E. C. Godbold, its secretary (the president of the board [P. L. Vioton] being then absent from the city), on the 14th of May. The board of pharmacy answered the petition and defended the suit. The judgment of the Supreme Court affirming the judgment of the district' court was rendered on March 30, 1903.
The present proceeding was filed on the-17th of July, 1903. The date of the service of the petition is not shown in the record.
The evidence shows that the plaintiff had *174 for many years before the institution of the mandamus suit been carrying on business in the drug store of Robin under the circumstances under which he claimed registration at the hands of the board; that he was at no time threatened with prosecution; that, when he stopped acting in the particular manner he liad been acting, he did so on the advice of counsel.
On the 20th day of May, 1002, plaintiff’s then employers (Couret & Co.) wrote to him as follows:
“We regret to inform you that pending your suit vs. The State Board of Pharmacy, for a certificate of registration, we will be unable to retain you in our employ from and after the 1st of June next.
“We would add however, that should you desire in order to insure your position on the termination of your suit, which we have reason to believe will be decided in your favor, we will agree to retain you, provided you will at all times when on duty have a registered pharmacist present, whose duty it will be to prepare and sign all prescriptions which may be presented, to be subject to our approval, and at your expense.
“Trusting,” etc.
The testimony discloses that the employment of the plaintiff by Couret & Co. continued throughout the pendency of the mandamus suit, he receiving the same remuneration as he had before, but that Mr. Jules Benezach, a regular pharmacist, was taken into the store, receiving the same remuneration which plaintiff, Monnier, was receiving. Couret claims that Benezach was employed by Monnier with money that they (Couret & Co.) loaned to Monnier; that in representation of the loan Monnier executed two promissory notes, -one dated May 1, 1903, for $321, with 8 per cent, interest from November 24, 1902, until paid, payable on demand to the order of Couret & Co., the second one dated March 13, 1905, for $73, with interest at 8 per cent, from date, similarly payable, both notes secured by pledge of the claim of Monnier for damages, costs, etc., against the Louisiana board of pharmacy.
Mr. Couret in his testimony declared that Monnier had never left their employ, and that, had he not let Monnier go on, they (Couret & Co.) would not have had the drug store, because he was familiar with the trade and had the trade, because he was there 201 or 25 years and witness (Couret) knew nothing about the drug business. There was testimony going to show that there was an understanding, never withdrawn, that pending the mandamus suit Monnier would not be interfered with, and that that suit was an amicable one for the purpose of testing the actually existing rights of the parties.
Before examining the question of damages, we will direct our attention to the legal questions involved, especially as to whether the members of the board of pharmacy were ever liable individually in the premises.
We may say at the outset that while the action of the board of pharmacy was without legal authority, as was decided by this court in the mandamus proceeding, it is established by the evidence that neither the board nor any of the members acted maliciously in the premises. On the contrary, we think the board and members acted in good faith, under the belief that what they did was within their powers, and that what was done was in aid of a proper enforcement of the law under which they were appointed. We think it is recognized by jurisprudence that “public officers who are intrusted by law with the, exercise of judgment and discretion, and who-are for this reason sometimes denominated quasi judicial officers, are certainly not liable to a person injured as the result of the exercise of their judicial or discretionary lowers, if the acts complained of are done within the scope and jurisdiction and authority, and without willfulness, malice, or corruption.” In some cases the rule has been laid down more broadly, and it is -said that no-public officer is responsible in a civil suit for a judicial determination, however erroneous it may be, and however malicious or corrupt *176 the motive which produced it, so long as he does not transcend the limits of his authority. The majority Of the cases, however, upon the subject do not carry the rule of exemption from liability to this extent. Am. & Eng. Ency. of Law (2d Ed.) vol. 23, p. 27, tit. “Public Officers.”
The officer must have jurisdiction of the subject-matter, and he must also keep within the limits of the power conferred on him. Where the circumstances of the case are such hs to render the officer liable, he is not relieved from responsibility by reason of mistake and honest intention. Willfulness or malice need not be shown; but, where he acts in good faith without malice, he is not liable for exemplary damages. He is liable only for compensatory damages. In some jurisdictions the right of action is held confined to cases where the services are not gratuitous or coerced, but voluntary and attended with compensation. In a large majority- of the cases the rule of liability is stated without this limitation. See Am. & Eng. Ency. of Law, vol. 23, p. 378. Judges of courts are sometimes held liable for their acts. In the cases of Grider v. Tally, 77 Ala. 422, 54 Am. Rep. 65, and Hudgins v. State (Ala.) 39 South. 717, the Supreme Court of that state held a probate judge who refused a license to retail spirituous liquors, when acting ministerially, liable for his acts; the applicant for. the license having fully complied with all the statutory requirements. In that decision the court defines what is meant by acting ministerially. The question of defendants’ acts in this particular case rest back of the general rule upon a special state of facts. They were members of a state board, a body politic, upon which was thrown by law the duty of granting certificates to applicants. We are to inquire whether, under the law, the members of the board are liable individually for the neglect of its duty by that body. In the American ¡ i & English Encyclopaedia of law, under the title referred to, it laid down that, if there is any neglect to exercise the powers or means of that body, it is the neglect of the body, and not of the individuals composing it. Hydraulic Brick Press Co. v. School District, 79 Mo. App. 665, and Bassett v. Fish, 75 N. Y. 303, are cited in support of that position.
In this connection, it is stated that, when an authority to do an act of a public nature is conferred by law upon a body or board of officers, one of such body or board cannot independently of the others, and, without the concurrence of them or some of them, exercise such authority.
Under the statute of 1888 the board of pharmacy was created a body politic as a state agency. The duties required by the act to be performed are public duties, to be exercised for the interest of the public. The statute named the board as the entity which is to perform the duty, and not the living persons holding membership in it. The duties referred to are corporate, not individual, duties.
No particular officer of the board is pointed out by the statute as having executive powers, and the record does not show that the board itself has delegated them to a particular person. No such power or duty is thrown upon the secretary. It is a difficult matter to obtain the consent of citizens to step aside from matters in which they are personally concerned and take upon themselves without remuneration those duties in which they have no interest greater than that of their fellow citizens, and to charge them with personal responsibility for acts of the whole board, where they are discharging their duties conscientiously, will greatly add to the difficulty of the situation. We are reluctant to bring about this result, -unless compelled to do so by imperative law and precedent. We have given this subject our best consideration. In the examination *178 ■of the question we have not overlooked article 443 of the Civil Code.
Article 443 declares that a corporation cannot commit the crime of treason or any other crime or offense in its corporate capacity, although its members may be guilty of those ■crimes in their individual capacity.
This article evidently refers to crimes or •offenses which it is impossible to reach and punish through the corporation itself, and •does not apply to civil responsibility of the members of the corporation for acts for which judgment could be rendered against the property of the corporation by writs of fi. fa. or of distringas. As said by the Court ■of Appeals of New York in Bassett v. Fish:
“It is true if one of the defendants [members of the corporation] had done a wrongful act, willfully or negligently of the premises of the district from whence injury came, to teacher or scholar, he would ordinarly be liable, but not because he was a trustee or member of the board ■of education, but because he was the person doing the act. So it may be that if one of them had been duly charged by the corporate body as its agent or servant, distinct from his relation •as a corporator, with duty and responsibility, the neglect of which brought damage to another, he would be liable as a private person therefor.
“For generally the servant or agent will be liable, as well as the superior of him,' for his neglect of duty. But it is not seen how a member of a corporate body, upon which body a •duty rests, can be held individually liable for the neglect of its duty by that body.
“There is no duty upon him to act individually. His duty is as an incorporator, and it is his duty to act in the corporation in the way prescribed for its action and by the use of its powers and means. And, if there he neglect to exert its powers or all its means, it is the neglect of the body, and not of the individuals composing it. Hence we are unable to find reason for upholding the judgment of the defendants, who were not personally charged by a corporate body with a duty as its agent or servant.”
In the case before us the act complained of was not one of commission, but of omission (a refusal to grant a certificate), and the action or nonaction of the corporate body was one with which the defendants were connected exclusively in their positions as members of the board. Nothing which they did or could do, simply as individuals, could alter the situation. As individuals, they were strangers to the act complained of. The official action of the different members became merged in the ultimate action of the board itself as an entity.
The judgment is correct, and it is hereby affirmed, with costs.
MONROE, J., dissents.