STATE *ex rel.* BANK OF COMMERCE & TRUST CO. *v.* FORBES
*et al.*

(In Banc. May 3, 1937. Suggestion of Error Overruled June 14, 1937.)

[174 So. 67. No. 32640.]

(1)

**Leftwich & Tubb,** of Aberdeen, for appellant.

4.

Rawls & Hathorn, of Columbia, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

The court below sustained demurrers to the appellant's declaration, and on its declining to plead further,

dismissed its action. The action was brought by the Bank of Commerce & Trust Company on a cause of action said to have accrued to Ralph May, deceased, and assigned to it by the administrator of May's estate. The declaration alleges in substance that in January, 1928, the county of Marion issued and sold 150 negotiable loan warrants or notes, for the sum of $1,000 each, payable to bearer, as follows: Notes numbered 1 to 10, both inclusive, payable March 15, 1929; 11 to 15, inclusive, March 15, 1930; 16 to 25, inclusive, March 15, 1931; 26 to 35, March 15, 1932; 36 to 50, March 15, 1933; and so on to March 15, 1936. The notes numbered 26 to 35, inclusive, were purchased by Ralph May, and were issued under chapter 768, Local and Private Laws of 1928, the validity of which is not here challenged, which provides: "That the board of supervisors of Marion county, be and are hereby authorized and empowered in their discretion, to borrow money or sums of money, not to exceed the total sum of one hundred and fifty thousand dollars ($150,000.00), for the purpose of constructing public roads in Marion county, Mississippi, and aiding in the construction of federal aid roads in said county, and to issue the negotiable loan warrants or notes of the said county of Marion therefor, bearing interest at not more than six per cent per annum, and payable semiannually, and to be due and payable in amounts not exceeding the following each year, to-wit: $10,000.00 in 1929; $5,000.00 in 1930; $10,000.00 in 1931; $10,000.00 in 1932; $15,000.00 in 1933; $30,000.00 in 1934; $35,000.00 in 1935, and $35,000.00 in 1936, and said board is also authorized and empowered to make a special tax levy annually at the time provided by law for making the general tax levy for the purpose of paying said loan warrants or notes at maturity, together with the interest thereon."

The resolution under which these notes were issued declares "that the board of supervisors hereby obligates itself to levy a special tax each year as provided by the

terms of the act of the legislature authorizing and empowering said board to issue these notes, and as provided by law, in a sufficient amount to pay the principal and interest of said notes on the due date thereof.''

In February, 1932, the board, pursuant to a resolution theretofore entered on its minutes declaring that the county was without funds to pay the notes held by May and some other outstanding notes of the county aggregating $35,000, issued and attempted to sell negotiable refunding bonds for the payment thereof. It was unable to sell the bonds, and May refused to accept any portion of them in lieu of the bonds held by him. On the maturity of the notes held by May he presented them to the Hanover National Bank, at which they were payable, but it declined to pay them, having no funds of the county in its hands for that purpose. They were afterwards presented to the board of supervisors of Marion county, which also declined to pay them; whereupon they were collected by means of an action thereon in a federal court. May employed attorneys to prosecute his federal court action, paying them therefor the sum of $1,500. The members of the board of supervisors of Marion county for the years 1928, 1929, 1930, and 1931 were H. T. Broom, W. L. Simmons, J. J. Sumrall, and L. A. Newsom. The members of the board of supervisors who assumed office on the first Monday of January, 1932, for a term of four years, were John T. Hutson, L. A. Newsom, R. W. Hammond, John E. Forbes, and John J. Beacham, all of whom, and the surety on their official bond, are parties defendant to the declaration, and each of whom filed a separate demurrer thereto.

The recovery sought is the $1,500 attorneys' fee paid by May, hereinbefore set forth.

Section 3227, Code of 1930, provides that ''the board of supervisors of each county shall, at its regular meeting in October of each year, levy the county taxes for

the fiscal year, . . . but, if the board of supervisors of any county shall not levy the county taxes at that time, the board may levy the same at any other regular adjourned, or special meeting.''

Section 5977 of the Code provides that ''every county in this state which has or may hereafter have legal and undisputed outstanding warrants or other obligations, and insufficient funds in the treasury to pay them or any of them, is empowered and required to at once prepare for, and take up such warrants and other obligations from the proceeds of serial bonds which shall be issued for such purpose, as is provided by law for issuance of bonds for the payment of outstanding obligations. . . . The prompt issuance of sufficient bonds to pay all of such legal and undisputed warrants or other obligations is made mandatory on such counties.''

Section 5986 of the Code reannounces section 5977 in so far as it relates to counties, and provides: ''Such [refunding] bond[s] shall be issued in sufficient amount to pay and retire any existing bonds as they mature whenever funds available from taxes are not sufficient to pay said bonds whenever they mature.''

Section 5990 of the Code requires: ''Whenever any county, road district, consolidated school district, rural school district, or other taxing districts controlled by the board of supervisors which has heretofore issued, or shall hereafter issue bonds or other obligations of which principal and interest shall be payable at some bank or trust company, or at some office other than the county treasury it shall be the duty of the clerk of the board of supervisors on the allowance of said board to issue a warrant against the proper fund for the amount of principal and interest due and to forward exchange to the paying agent, said exchange to be sufficient in amount to pay said principal and interest and a reasonable fee to said paying agent for handling same, said fee not to exceed one-quarter of one per cent. of the amount of coupons paid and one-eighth of one per cent.

of the amount of bonds paid. Said exchange shall be forwarded in time to reach the paying agent at least five days prior to the date on which said principal and interest shall become due, and the receipt of the paying agent for said remittance shall be sufficient voucher in the hands of said clerk for said remittance until the bonds or coupons shall have been paid and cancelled and returned to said clerk.''

The declaration and exhibits thereto do not disclose that the board failed to levy taxes in 1928, 1929, 1930 for the payment of the principal of these notes which matured in 1929, 1930, and 1931. On the contrary, these notes were paid off as they matured; it did not levy taxes in October, 1931, or thereafter, for the payment of the notes held by May which matured in March, 1932.

The grounds on which the declaration seeks a recovery are: (1) The failure of the board of supervisors to levy a special tax for the payment of the notes purchased by May; and (2) the failure of the board of supervisors to furnish the Hanover National Bank with money for the payment of the notes.

Chapter 768, Local and Private Laws of 1928, contemplates that these loan warrants or notes should be issued in 1928, and expressly provides that a designated portion thereof should mature in each year, beginning with 1929, and since neither it nor the resolution adopted by the board when issuing the notes expressly indicate an intention to build up a sinking fund by taxation for the payment of all the warrants or notes at their maturity, it seems clear that the only tax levy required by it is an annual levy thereof sufficient to pay the interest on the warrants or notes as it becomes due, and to pay the principal of such warrants or notes as become due before the time fixed by law for the next levy of taxes arrives. The board, therefore, was not in default in failing to levy a tax for the payment of the notes held by May prior to October, 1931.

It is said by counsel for the appellee that in October,

1931, the board had the option under chapter 768, Local and Private Laws of 1928, when construed in connection with sections 5977 and 5986 of the Code, to either levy a tax for the payment of these notes that were to mature in March, 1932, or to issue refunding bonds for the payment thereof. The permission given by section 5986 to issue refunding bonds is when, but not unless, ''funds available from taxes are not sufficient to pay said bonds whenever they mature.'' Had a tax for the payment of these notes been levied in 1931, the presumption is that it would have been collected and the notes paid therefrom; in such event no necessity would have arisen for the issuance of refunding bonds. The board, therefore, was derelict in not levying a tax for the payment of these notes in 1931. The board that came into office in January, 1932, was confronted with the fact that because no tax had been levied therefor there were no funds in the county treasury with which to pay the notes held by May. Whether the board then had the power under section 3227 of the Code to levy a special tax for the payment of these notes is doubtful, but that aside, it did issue refunding bonds for the purpose of paying the notes, which bonds were validated under section 312 et. seq. of the Code, and therefore the power of the board to issue them cannot now be questioned, and it cannot be now held to have been derelict in not levying a tax for the payment of these notes. Moreover, it is very probable that had the board levied a tax in January, 1932, for the payment of these notes the tax would not have been collected in time for their payment in March, 1932.

From this it necessarily follows that the demurrers of Hutson, Hammond, and Beacham, who did not become members of the board until the first Monday in January, 1932, should have been sustained, for it was through no fault of theirs that the county was without funds to pay the notes held by May when they matured.

The other appellees, who were members of the board

during the years 1928, 1929, 1930, and 1931, are here liable because of the failure of the board to levy a tax in 1931 for the payment of these notes if, but only if, a statute so provides.

Boards of supervisors are not mere ministerial agents of the state. Prior to the adoption of the State's Constitution of 1832 many of the duties now imposed on such boards were discharged by a county court. They appear in the judiciary articles of the Constitutions of 1832 and 1890, in the first under the name of boards of police (article 4, sec. 20), and in the second under their present name (sec. 170), and are charged with duties judicial, legislative and executive; and in McNulty v. Vickery, 126 Miss. 341, 88 So. 718, it was expressly held that a member of the board of supervisors is not a ministerial, but is a quasi-judicial, officer. See, also, Haley v. State, 108 Miss. 899, 67 So. 498. The failure to levy the tax here in question was that of the board of supervisors in its corporate capacity. And the rule is "that a public officer, who is a member of the corporate body upon which a duty rests, cannot be held liable for the neglect of duty of that body. If there be refusal to exercise the power of such body, it is the refusal of the body, and not of the individuals composing it. The official action of its different members is merged into the official action of the board itself as an entity." 22 R. C. L. 487. This excerpt from R. C. L. was quoted and applied in Pidgeon Thomas Iron Co. v. Leflore County et al., 135 Miss. 155, 99 So. 677, 680, wherein the members of a board of supervisors were sought to be held liable for the failure of the board to discharge a statutory duty.

Chapter 217, Laws 1918, provides "that any person entering into a formal contract with this state, any county thereof, municipality therein, or any political subdivision whatsoever therein, for the construction of any building or work or the doing of repairs, shall be required before commencing same to execute the usual

bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying labor or material therefor;'' and further provides for a right of action on this bond by persons furnishing labor or material to the contractor. The board of supervisors of Leflore county failed to require such a bond of the contractor whom it had employed to construct a bridge for the county. This contractor failed to pay Pidgeon Thomas Iron Company for material sold him by that company, and used by him in constructing the bridge. Pidgeon Thomas Iron Company sued the county and the members of the board of supervisors for the damages thereby sustained. The court declined to permit a recovery against either the county or the members of its board of supervisors, saying with reference to the latter: ''The board of supervisors of a county is created by statute for special purposes, and it exercises only such powers as are conferred by statute, either expressly or by implication, and it is charged with the performance of such duties as are imposed by statute. In the discharge of the duties imposed upon the board the members thereof act in an official and not an individual capacity, and any neglect or failure in the exercise of its powers or discharge of its duties is the default of the board, and not of the individuals composing it, and they are not liable for such default unless made so by statute. Chapter 217, Laws of 1918, does not in terms impose any duty upon the members of the board as individuals, but only as officials representing the public, and it does not impose any individual liability for the defaults of the board in respect to the duties thereby imposed upon it. . . . In the absence of an express declaration of legislative intention to impose individual liability on the members of a board of supervisors for the defaults of the board, we think it is clear that none exists, and that the demurrer filed on behalf of the members of the board was properly sustained.'' Pidgeon Thomas Iron Co.

v. Leflore County et al., supra. As there, so here, the statute (chapter 768, Local and Private Laws of 1928) "does not in terms impose any duty upon the members of the board as individuals, but only as officials representing the public, and it does not impose any individual liability for the defaults of the board in respect to the duties thereby imposed upon it." To the same effect, see McNulty v. Vickery, supra; Hydraulic Press Brick Co. v. School Dist., 79 Mo. App. 665; Bassett v. Fish, 75 N. Y. 303; Monnier v. Godbold, 116 La. 165, 40 So. 604, 5 L. R. A. (N. S.) 463, 7 Ann. Cas. 768; Blanchard v. Burns, 110 Ark. 515, 162 S. W. 63, 49 L. R. A. (N. S.) 1199.

Among the cases relied on by the appellant are Walton v. Colmer, 169 Miss. 182, 147 So. 331, 148 So. 635; Amy v. Barkholder (Amy v. Supervisors), 11 Wall. 136, 137, 20 L. Ed. 101; First Nat. Bank v. Filer, 107 Fla. 526, 145 So. 204, 205, 87 A. L. R. 267. Walton v. Colmer was an action brought by a district attorney for the benefit of a county against the members of its board of supervisors for the breach of an official duty, and of course has no relevancy here. We are dealing, not with the liability of a member of a board of supervisors to the county itself for the breach of his official duties, but with his liability therefor to a private individual. This distinction was expressly made in McNulty v. Vickery, supra.

In Amy v. Barkholder the members of the board of supervisors had been directed by writ of mandamus to levy a tax sufficient to pay a judgment and costs rendered against the county; a state statute also imposed this duty on them, and declared "that a failure on their part to perform the duty enjoined, should render them personally responsible for the debt." The court held them personally responsible to the judgment creditor therefor. If the court there intended to impose liability without reference to the statute imposing it, it was on the ground there pointed out that the duty to levy the tax

because of the command in the writ of mandamus so to do caused the duty thereby imposed to become one of purely ministerial character. This is the construction put on the case in Section 784 of Mechem on Public Officers (1890). The case, therefore, is not in point here.

In First National Bank v. Filer, an action was "brought by the holder of certain promissory notes issued by the board of public instruction of Dade county, Fla., to charge the members of the board issuing them with personal or individual liability thereon." The notes had been issued by the board for the payment of property bought by it, without complying with the statute regulating such purchases, rendering the notes void. The members of the board were held personally liable for the payment of the notes, the court saying: "The general rule has been understood to be that a public officer, who is a member of a board or body corporate upon which a duty rests, cannot be held liable for the neglect of duty by the body or board of which he is a member, it by no means follows that a public officer may not, upon the principles of the adjudicated cases, decided in this state, and in states whose decisions we regard as highly persuasive, be held personally and individually responsible for the acts of public boards of official bodies, so far as he personally joins in and lends his efforts toward the accomplishment of the wrongful acts of the body or board itself as an entity."

It will be observed that the court thereby engrafted an exception on the general rule of nonliability of a member of a board for the acts of the board in its corporate capacity, i. e., he is liable "so far as he personally joins in and lends his efforts toward the accomplishment of the wrongful acts of the body or board itself as an entity." Should it be held that such an exception exists, as to which we express no opinion, the declaration here does not allege that the appellees joined in the failure to levy this tax, or did anything to prevent its being levied.

The only statute said by the appellant to impose liability on the appellees for the damages sustained by May because of the failure by the board of supervisors to levy the taxes for the payment of his notes is section 5993, chapter 152, Code of 1930, which is as follows: "For failure or refusal to comply with the foregoing provisions any official charged with any duties hereunder shall be liable on his official bond to any holder of any bond or coupon for any and all expenses incident to the collection of same, and for all damages which may have accrued on account of the failure to pay same promptly at the place of payment at maturity."

The only tax levy referred to in chapter 152 is for the payment of bonds authorized by that chapter; and the notes here in question were not issued under that chapter but under a special act conferring power to issue notes not included in any section of chapter 152 of the code, consequently section 5993 thereof has no application here.

Should that section of the Code be held to be applicable here, then it will also apply to a failure of the members of the governing board of any taxing district to levy taxes with which to pay any debt due by the district, thereby imposing a burden on the members of such boards which the Legislature did not intend to, and probably would not, impose.

The court below committed no error in sustaining the demurrers to the declaration.

Affirmed.

CONCURRING OPINION.

**Griffith, J.,** delivered a concurring opinion.

Under House Bill No. 1064, chapter 768, Loc. & Priv. Laws 1928, Marion county issued and sold 150 negotiable notes of said county in denominations of $1,000 each, payable to bearer, with 5½ per cent. interest, the in-

terest payable semiannually. Ten of these notes or bonds matured on March 15, 1932, and were owned by one Ralph May, appellant's assignor. By the act aforesaid the board of supervisors of the county were "authorized and empowered to make a special tax levy annually at the time provided by law for making the general tax levy for the purpose of paying said loan warrants or notes at maturity, together with the interest thereon."

The notes or bonds maturing during the years previous to 1932 had been fully paid with interest, but the board for the reasons hereinafter to be mentioned, failed to levy such a tax in 1931 to meet the said bonds owned by May, or to meet $25,000 in bonds owned by others, maturing in 1932. Instead of so doing, the county issued its refunding bonds under the authority of section 5986, Code 1930, in the sum of $35,000, with 6 per cent. interest, and took such steps that these refunding bonds were validated on December 21, 1931; the purpose or anticipation being that, at the increased rate of interest, the holders of the said bonds maturing in 1932 would be willing to exchange their old bonds for the refunding bonds, or else that the refunding bonds, bearing such a high rate of interest, could be readily sold, and the money thus realized used to pay off the maturing bonds.

The other bondholders accepted the refunding bonds, but May refused, and the county failed in its efforts to sell the refunding bonds by which to obtain the money to pay May, who thereupon sued the county in the federal court, obtained judgment, and procured also a writ of mandamus to the board, requiring them to levy and have collected a sufficient special tax to pay the said May's bond with interest. The writ was obeyed by the board and other officers of the county, and the May bonds, with all interest and the court costs, were fully paid.

May having died, appellant, the lawful assignee of his estate, filed its action in the circuit court of said county,

to recover of the members of the board of supervisors of the county and the sureties on their official bonds, the sum of $1,500, attorney's fees, which May had been obliged to pay out in the matter of enforcing his demands aforesaid in the federal court, the present action being predicated upon section 5993, Code 1930, a section near the conclusion of said chapter 152, Code 1930. Said section reads as follows: "For failure or refusal to comply with the foregoing provisions any official charged with any duties hereunder shall be liable on his official bond to any holder of any bond or coupon for any and all expenses incident to the collection of same, and for all damages which may have accrued on account of the failure to pay same promptly at the place of payment at maturity." It is the contention of appellant that section 5984, Code 1930, a foregoing provision in said chapter 152 of the Code, required boards of supervisors to annually levy a special tax sufficient to pay the principal and interest of bonds as they fall due, and that the failure of the board to make such annual special levy is sufficient to bring into operation the quoted section in regard to the recovery of expenses.

Although the quoted statute is penal in its nature, it may be conceded for the purpose of this case that had the board simply neglected to take any steps at all, they would have been individually liable on their bonds, and it may be further conceded that had the steps taken been such as to amount to no more than a formal maneuver which they should have known would not procure the money due, and when due they would still be liable. But the statutory duty imposed upon them was to raise the money due, and the penalty prescribed was to incite them to action in that respect. They were not, however, confined to one method only for the raising of the money. Two statutory methods were placed at their disposal, one to levy a special tax and the other to issue refunding bonds. Section 5986 of the same chapter 152. Whether they should pursue one method or the other

was a matter committed to their judgment and discretion, according to the exigencies of the situation and as was best in their opinion, so long as in pursuing the alternative method they acted upon reasonable or substantial grounds.

There is no fact of common knowledge more readily acceptable as such, and as to its extent, than that bearing upon the deep depression which had settled over this country, and upon every part of it, in 1931. The pervading extent of this calamitous country-wide misfortune was such that an exceedingly large portion of property owners were unable to pay their ad valorem taxes, and millions of acres of land were being sold to the state for delinquent taxes. It was impossible for a board of supervisors to estimate with even a working approximation as to what rate of a special levy would be required to produce a given sum, and to be certain to produce it, the levy would have to be made so high as to be unbearably burdensome upon those of the taxpayers still able to pay.

In this calamitous situation the board here availed of the alternative course of issuing refunding bonds—a course which was pursued at that time in a great majority of such cases throughout the state. They issued these refunding bonds at a higher rate, at 6 per cent., a rate so high that never before had county-wide bonds, duly validated and rendered beyond question of legality, failed to find a ready sale and produce the money. Under the adverse and almost impossible conditions then confronting them, having pursued the alternative method allowed to them to raise this money, and having done it upon good reasons and in such manner as to have justified every reasonable expectation that their efforts would be successful, they are, in my opinion, not justly liable under the penal statute here invoked, and the judgment of the trial court was correct.

## DISSENTING OPINION.

**Ethridge, J.**, delivered a dissenting opinion.

Under chapter 768, Local & Private Laws of Mississippi 1928, the board of supervisors of Marion county was authorized to issue bonds not to exceed $150,000, for the purpose of constructing public roads therein, and to aid in the construction of federal-aid roads in said county, bearing interest at not more than 6 per cent., payable semiannually, as follows: $10,000 in 1929; $5,000 in 1930; $10,000 in 1931; $10,000 in 1932; $15,000 in 1933; $30,000 in 1934; $35,000 in 1935; and $35,000 in 1936; and to make a special levy of taxes annually for the purpose of paying said bonds at maturity, with the interest due thereon.

No question is raised as to the validity of the issuance of the bonds. The board of supervisors, under said law, issued the bonds, and in the order issuing same, pledged itself to levy annual taxes to pay same. The statute gave the board authority to levy taxes to pay the bonds therein provided for, and the board obligated itself to levy taxes annually to pay same when due, and these acts constituted a contract, binding upon the board of supervisors making the order, and its successors in office, during the life of the bonds, which was an important part of the inducement to buyers to take said bonds, and warranted them to expect that each year there would be a levy sufficient to raise enough money to pay the bonds.

The board of supervisors sold the bonds to a Memphis, Tenn., bank, and made them payable at the Hanover National Bank in New York City, N. Y. One Ralph May, now deceased, bought from the Memphis bank $10,000 in bonds, payable in 1932, and on its due date May caused same to be sent to the New York bank for payment, but payment was there refused, as there were no funds with it for the purpose of paying same.

Thereupon May tendered these bonds to the board of supervisors of Marion county, Miss., for payment; but there payment was refused for the reason that the board had not made the tax levy for the year 1931. The board entered, as a part of its order, the recital on its minutes that: "Whereas, at the time of the maturity of the said notes, to wit, March 15, 1932, there were no funds on hand in the county depository which could be lawfully used for the payment of the principal of said notes, nor for the payment of any of said series of Marion county road notes maturing in the year 1932, nor has there since been, nor is there now, such funds on hand to pay and redeem said series of notes so maturing on March 15, 1932, and or on February 15, 1932." It then recited that the board did, on December 7, 1931, issue refunding bonds in the sum of $35,000, and had exchanged these refunding bonds with the holders of bonds with the exception of the claimant, May.

Thereafter the bank, as May's administrator, filed suit in the federal court for the Southern District of Mississippi against Marion county for said amount, and had execution issued, which was returned nulla bona. Thereafter the bank, by leave of the court, filed a petition for mandamus to compel the board to make a tax levy to raise funds to pay the $10,000 of bonds and in response thereto the board levied a tax in 1934 sufficient to pay the bonds with interest. The declaration alleged, and the demurrer admits, that the bank, as the administrator of May, was obliged to spend $1,500 in employing attorneys to secure payment of the bonds, and that this was a reasonable attorney's fee. The demurrer to the declaration was sustained.

There were attached to the declaration, as exhibits, the bonds, the proceedings allowing their issuance, etc., the order showing nonpayment, the declaration and judgment in the federal court, the writ of mandamus and the return thereon, and numerous other documents to show the proceedings bearing upon the matter.

It would seem that the question presented is the liability of the members of the board of supervisors of Marion county for the expense of collecting these bonds.

It will be seen that the special act giving the board of supervisors of Marion county the power to levy taxes for the payment of the bonds at the same time as taxes for other purposes were levied, and the general law covering the year 1931, chapter 122, Laws 1930, fixing the county tax levy in the various counties, do not impose any limit on the tax-levying power of the board as to these bonds. Section 1, fixing the levy, reads as follows: "The boards of supervisors of the various counties may fix a tax rate for all purposes, *exclusive of the county and district road taxes and bridge taxes, common school taxes, agricultural high school taxes, and other school taxes, interest on bonds, and sinking funds* at a rate not exceeding six mills on the dollar for the year 1930 and not in excess of six mills on the dollar for the year 1931. Provided, however, that counties having an assessed valuation of less than Four Million Dollars may fix a tax rate for all purposes exclusive of county and district road taxes and bridge taxes, agricultural high school taxes and other school taxes, interest on bonds, and sinking funds at a rate not in excess of eight mills for each of said years." This section is applicable here.

Section 3227 of the Code of 1930 provides and directs that county taxes shall be levied at the October meeting of the board of supervisors; "but, if the board of supervisors of any county shall not levy the county taxes at that time, the board may levy the same *at any other regular adjourned, or special meeting.*" (Emphasis supplied.) As the taxes required to meet the notes or bonds maturing March 15, 1932, were not levied at either the October or subsequent meetings of the board in 1931, the board was authorized and required to do so at the January, 1932, meeting; and although certain persons first became members at that time, these were under duty to make the proper levy—that is to say, the board

should have done so at that time. The new members of the board were under duty at this first meeting to find out the status of county affairs and county obligations, and what had been done to meet maturing obligations; and if no taxes had been levied, as required by law and by contract, to pay these maturing obligations, to insist upon levying the proper taxes. The authority to levy taxes at subsequent meetings applied to every tax required by law to be levied; and if through oversight any tax had been omitted, then to make the proper levy. It is, of course, the policy of the law to have the county obligations met at maturity, or at the earliest time provided by law for that to be done. For failure to perform this duty, each member became liable, under the statute referred to.

In order to solve the question here presented, it is necessary to construe all the statutes in pari materia, and from the entire legislation upon the subject, determine the policy of the law. See Mississippi Digest, ''Statutes,'' 225; Miss.-So. Digest, Statutes, section 225; Dec. Dig. ''Statutes,'' 225; 59 C. J. 1042, section 620. The Special Local and Private Act referred to must be construed in connection with chapter 152, Code of 1930, and section 247 of said Code. See Greaves v. Hinds County, 166 Miss. 89, 145 So. 900, 59 C. J. 1056, section 623. From a careful reading and analysis of these statutes it seems to be manifest that the legislative purpose was to compel counties and other subdivisions of the state to make their bonds payable, part each year, so as to have a complete liquidation of their indebtedness, and thus maintain the public credit by issuing refunding bonds only after bona fide methods have been complied with, and failed to secure sufficient revenue to pay the debts.

By section 5980, Code 1930, it is provided that no county or municipality shall issue any bonds except on the serial plan. Section 5982 provides how counties and districts may issue bonds. Section 5983 provides for

elections to be held to determine whether the people want such a bond issue. Section 5984 provides the conditions upon which bonds may be issued should the election result in favor of the issue, and provides that maturities shall not be longer than twenty-five years, with not less than one-fiftieth of the total issue to mature each year during the first five years, and not less than one twenty-fifth of the total issue during the succeeding ten-year period of the life of the bonds; the remainder to be divided into approximately equal payments, one payment to mature each year of the remaining life of the bonds.

Section 5985 provides that the proceeds of the bonds shall be used for no other purpose than the one set forth in the original resolution of the board of supervisors, and any officer diverting or assisting to divert any such fund to any other purpose than the one set forth originally in said resolution of the board of supervisors, shall be guilty of a misdemeanor and punished accordingly, and shall "be liable both personally and on his official bond for such diversion, and suit may be brought by any taxpayer interested." Section 5986 provides a limitation on the amount of bond issues. Section 5987 provides for the lending of the sinking fund when accumulated.

Section 5989 provides for the validation of bonds, and section 5990 provides as follows: "Whenever any county, road district, consolidated school district, rural school district, or other taxing districts controlled by the board of supervisors which has heretofore issued, or shall hereafter issue bonds or other obligations of which principal and interest shall be payable at some bank or trust company, or at some office other than the county treasury it shall be the duty of the clerk of the board of supervisors on the allowance of said board to issue a warrant against the proper fund for the amount of principal and interest due and to forward exchange to the paying agent, said exchange to be sufficient in amount to

pay said principal and interest and a reasonable fee to said paying agent for handling same, said fee not to exceed one-quarter of one per cent. of the amount of coupons paid and one-eighth of one per cent. of the amount of bonds paid. Said exchange shall be forwarded in time to reach the paying agent at least five days prior to the date on which said principal and interest shall become due, and the receipt of the paying agent for said remittance shall be sufficient voucher in the hands of said clerk for said remittance until the bonds or coupons shall have been paid and cancelled and returned to said clerk.''

Section 5991 provides that boards of supervisors shall make allowances at regular meetings held at least thirty days before said bonds and coupons become due, and section 5993 provides as follows: ''For failure or refusal to comply with the foregoing provisions any official charged with any duties hereunder shall be liable on his official bond to any holder of any bond or coupon for any and all expenses incident to the collection of same, and for all damages which may have accrued on account of the failure to pay same promptly at the place of payment at maturity.''

The original of this section, section 4, chapter 233, Laws of 1920, was in force when the notes or bonds were issued, and when the special act (chapter 768, Loc. & Priv. Laws 1928) was passed; and the bond issue was controlled by this provision. This chapter, then, certainly applied to all bonds or indebtedness issued, and under its very terms was so applicable—it was not a provision in any particular scheme, but applied to all issues whatsoever. The board of supervisors is a continuing body, and although its members change from time to time, the board does not; and the acts of the board in 1928, pledging the full faith and credit of the .county, bound all boards to carry out that pledge. It was certainly made under authority of law. This section was enacted with full knowledge of the general

statute on the liability of officers (section 2903, Code 1930) and was intended to give a more comprehensive liability and create a personal liability on each officer and his bond for failure to perform these particular duties.

From these sections the conclusion seems to be inescapable that the public policy is that all debts incurred by counties and municipalities and other taxing districts shall be promptly paid at maturity; and in order to prevent boards of supervisors from neglecting to pay such obligations, thus impairing the credit of the county or other taxing district, and to insure bondholders from being put to great expense in collecting bonds when there is default in payment, the members of the board of supervisors who are responsible for such default shall be liable on their bonds.

In this connection it must be remembered that this state has greatly suffered in its credit from the repudiation of bonds nearly a century ago. It has also suffered from the fact that in years past sinking funds were not provided to take care of maturing bonds, and frequently it has been necessary to raise funds by issuing new bonds. Aware of the propensity of public authorities to incur debt to meet a situation deemed to be advantageous, and then fail to provide sufficient funds to repay such debt, and in order to discourage the issuance of bonds without adequate provision for their being paid during the enjoyment of the benefit, the Legislature, in 1918, by chapter 209, enacted a plan for the serial payment of bonds, and prohibited the issuance of other kinds. The issuance of refunding bonds, as provided for in section 5977, Code of 1930, is only to be resorted to when serial methods have been tried out in good faith, and insufficient funds have been raised. When this section is considered in connection with the policies above outlined, it is manifest that the Legislature intended to give no option to boards of supervisors to issue refunding bonds, instead of making tax levies. Under this

section there is to be no election by the voters, and no. limit as to the amount necessary. It is clear that the Legislature did not intend to permit boards of supervisors to issue bonds, and not levy taxes to pay them;. and then to issue refunding bonds to take care of them.

Boards of supervisors in issuing bonds, and the people in voting for their issuance, must bear in mind that bonds must be paid, and that conditions might change—. but that changing conditions do not free them from duties imposed by law.

If the board, in the case at bar, had levied a tax in good faith, on honest judgment, to pay the obligations, and if, through stress of conditions, all the money had not been collected, there might be reason, sufficient in law, to issue refunding bonds; and reason to hold that there was no personal liability on the board of supervisors, since they had made an honest, intelligent effort to comply with the law, and had failed.

The public too often forgets that depressions affect men of wealth and financial institutions, as well as ordinary people; but whether that be true or not, it is important that confidence and faith be maintained, and that obligations be promptly paid when due. The evil sought to be circumvented is well illustrated by the facts of this case. The bond issue payable during the first years is much less than that of the later years, and the burden grows as the years pass. The board must have figured that there would be a great increase in property values, and a decrease in public expenditures.

The Legislature in the past few years has made an honest, consistent effort to maintain the public credit and guard against future repudiations. The piling up of debts without providing for their payment when due, by taxes levied and collected for that purpose, during the life of the bonds, will lead inevitably to insolvency and repudiation a disaster to be avoided at all hazards. The act of the board here involved, and its sanction by this court, I fear will have an unfortunate effect upon

the credit and financial standing of the state and its subdivisions.

I think there is liability upon the board of supervisors of Marion county, and that the demurrer should have been overruled, and such judgment rendered against the persons officially responsible, and against their bondsmen, as would be disclosed upon a hearing of the matter upon its merits.