FIDELITY & DEPOSIT COMPANY OF MARYLAND, a Corporation v. FRED P. CONE, as Governor, for use, etc., *et al.*

190 So. 268
Division A
Opinion Filed June 30, 1939

*John H. Carter* and *John H. Carter, Jr.,* for Appellant; *H. H. Wells* and *James N. Daniel,* for Appellees.

BUFORD, J.—This is a companion case to that of Fidelity & Deposit Company of Maryland, a corporation, v. Board of Bond Trustees of Special Road and Bridge District No. 1 of Washington County, Florida, decided at this term of the Court.

The principal difference between the factual conditions of the instant case and the case above referred to is that the bond in this case was in accordance with the statute and the condition of the bond involved in this case is:

"The Condition of the Aforegoing Obligation is Such, That, Whereas, the said Principal, has been elected or appointed a Member of the Board of Bond Trustees of Special Road and Bridge District No. 1, of Washington County, Florida, for the term beginning July 1st, 1921, and ending August 1st, 1923, or until his successor is elected or appointed and qualified;

Now Therefore, if the said Principal shall well and faithfully perform all and singular the duties incumbent upon him by reason of his election or appointment as said Bond Trustee and honestly account for all moneys coming into his hands as said Bond Trustee, according to law, then this obligation to be null and void, it is otherwise to be and remain in full force and virtue."

Paragraph 3 of the amended bill alleges:

"That the said C. B. Dunn qualified as a member of said Board of Bond Trustees on or about the 29th day of August, 1921, and pursuant to the provisions of said Chapter 8861, gave a bond with the defendant, Fidelity & Deposit Company of Maryland, a corporation, as surety thereon payable to Honorable Cary A. Hardee, then Governor of the State of Florida, and his successors in office, in the sum of Five Thousand Dollars conditioned as required by said Chapter 8861, which bond was approved by the Clerk of the Circuit Court of Washington County, Florida; that the said bond was dated sometime about or during the period from July 1, 1921, to August 29, 1921, and was for the term beginning July 1, 1921, and ending August 1, 1923, or until the successor of the said C. B. Dunn should be elected or appointed and qualified, a substantial copy of said bond being attached to the original bill of complaint herein and marked exhibit 'A' and same is made a part of this amended bill of complaint."

Paragraph 6 of the amended bill alleges:

"That the condition of the said bond was and has been breached and that the said C. B. Dunn failed to well and faithfully perform all and singular the duties incumbent upon him as a member of the Board of Bond Trustees for Special Road and Bridge District No. 1 of Washington County, Florida, a corporation, to the damage of the said Board of Bond Trustees in this, to-wit: that, as a member of said Board of Bond Trustees the said C. B. Dunn at all times from and after the 10th day of December, 1930, knowingly permitted more than Twenty Thousand Dollars of the funds of said Board of Bond Trustees to be and remain on deposit in the Bank of Chipley, a banking corporation under the laws of the State of Florida, and a depository of said Board of Bond Trustees, without requiring the said depository to give suitable security to protect the funds so deposited and without requiring the said depository to give any security whatever to protect the said funds; that the said funds were on deposit in said bank after the 10th day of December, 1930, with the knowledge, consent and acquiescence of the said C. B. Dunn as a member of the said Board of Bond Trustees and without any protection from him and without any effort on his part to require any security therefor; that on or about the 14th day of October, 1931, the said depository became insolvent, closed its doors and suspended business and went into liquidation and its affairs are now being closed up by the liquidator appointed under the laws of Florida; that at the time the said bank suspended and closed as aforesaid the said Board of Bond Trustees had on deposit in said depository the sum of Twenty-six Thousand Five Hundred Ninety-five and 07/100 Dollars all of which was unsecured and unprotected as aforesaid; that the said Board of Bond Trustees has been able to collect dividends of thirty per cent of said deposit, but has been unable to collect or

realize any other or further sum or dividend thereon and said depository has failed and refused to pay the balance due on said deposit."

Paragraphs 5 and 6 of the answer are as follows:

"Further answering, this defendant says that the said C. B. Dunn did not fail to perform any duty incumbent upon him by the terms of said bond. That it was the duty of the Board as a corporation to require all depositories to give suitable security to protect the bonds to be issued by said special road and bridge district under the terms of said Act, and other funds so deposited, such security to be of the character as then provided by law governing depositories, down to 1927 when by a special Act of the Legislature Chapter 13,534 the County Commissioners of Washington County were authorized to issue $500,000.00 of 30-year six per cent bonds, the proceeds to be used for redeeming and refunding outstanding bonds of special road and bridge District No. one issued under the provisions of said Chapter 8,861, Acts of 1921, and to build other roads designated in said Act of 1927. Said Act provided for a Board of Bond Trustees who should give bond payable to the Governor in the sum of $5,000.00 for the faithful performance of their duties. They were required to keep all moneys on deposit in the county depositories, but without any requirement to take security from the depositories. Said Board was made a body corporate with the same powers as the Board of Bond Trustees under the Act of 1921. The said C. B. Dunn was a member of said Board and it was not his duty as a member of the Board to require security of the depositories for said board's funds. Reference to said Chapter 13,534 is hereby made for the purpose of having the Court to take judicial knowledge thereof.

## "VI

"This defendant would further show that the plaintiff itself let the depository bonds lapse, after having carried them for several years, and did not renew them and the defendant avers that it was through the fault of the board itself that funds were allowed to remain in bank without security taken therefor. That plaintiff is now seeking to take advantage of its own wrong as against the surety of an individual member of the Board who was not the Board itself And defendant further avers in that connection that the plaintiff as a board knew or had reason to believe the probable insolvency of said Bank of Chipley during the time funds to the amount of more than $20,000.00 were allowed to remain in said bank without security, and made no effort to obtain security, or to withdraw said funds from said bank, or even to notify this defendant as supposed surety upon the bond of said C. B. Dunn that he was defaulting in his duty, and thereby giving this defendant an opportunity to protect itself on the alleged liability."

So it appears that the claim for relief against the surety is postulated upon the theory that the complainants may recover from Dunn's surety, Fidelity & Deposit Company of Maryland, because of the fact that the Board of Bond Trustees failed to require of a bank surety bond to protect the deposit of the Board of Bond Trustees in such bank and not because of any individual defalcation or breach of trust by Dunn.

It is contended by appellants that it is settled, both by text writers and judicial decisions, that where a duty rests upon a corporate board, whether such board be a public board or board of a private corporation, and the Board fails to perform a duty imposed upon it as such, the individual members of such Board are not liable on their bonds for such failure. The Board of Bond Trustees

created by Chapter 8861, *supra*, was by Sec. 4 of that Act declared to be a body corporate, and by subsequent sections of the Act certain powers and duties were conferred upon that Board as a body corporate. Section 16 of the Act, *inter alia*, provided:

"The Board of Bond Trustees shall require all Depositories to give suitable security to protect the bonds and other funds so deposited; such security to be of the same character as now provided by law governing depositories."

The Act imposed all the duties and powers therein conferred upon the "Board of Bond Trustees" except that duty which it required to be performed by each member to give a bond for the faithful performance of his duties. Appellants rely upon the following authorities to support the principle contended for:

The text in 22 R. C. L. 487 reads:

"The question of the liability of a public officer for the wrongful act of a corporate body of which he is a member has not often been presented to the courts for adjudication. The rule, however, appears to be established that a public officer, who is a member of a corporate body upon which a duty rests, cannot be held liable for the neglect of duty of that body. If there be refusal to exercise the power of such body, it is the refusal of the body, and not of the individuals composing it. The official action of its different members is merged into the official action of the board itself as an entity."

This enunciation is adhered to in principle in Monnier v. Godbold, *et al.*, 116 La. 165, 40 Sou. 604; State *ex rel* Bank of Commerce v. Forbes, *et al.*, 179 Miss. 1, 174 Sou. 67; Pidgeon Thomas Iron Co. v. La Flore Co., *et al.*, 135 Miss. 155, 99 Sou. 677; Hydraulic Pressed Brick Co. v. School District, 79 Mo. Appeals 665.

In the latter case the Court said:

"The Act of 1895 does not point out the County Judge, the city alderman, the town trustees and the directors of school districts as the persons or collection of persons who shall require the contractor to give the bond for the protection of subcontractor, etc., but names the county, the city, the town and the school districts as distinct and separate entities on each of which the duty is imposed to require that the bond be given when it, in its corporate capacity, has contracted for the erection of a public building. It is to these corporations and not to the living persons through whom they manifest their will and power that the Legislature has spoken, and when the contract for the erection of the school building was let by the School District of Kirkwood, it became its duty to require the contractor to give bond, the duty was a corporate one, and the failure to perform this duty was the negligence of the corporation and not of the individuals who composed the Board of Directors of the District. In the letting of the contract and in their failure to take the bond of the contractors, the directors did not act as individuals engaged in the enterprise of erecting a building but as a board of directors through which the school district manifested its will."

See also Bassett v. Fish, 75 N. Y. 303.

In McDermott v. Board of Commissioners, etc., 60 Ind. App. 209, 110 N. E. 237, it was said:

"Now where the entity, made up of three resident voters of the county, styled the board of commissioners, and holding their offices by virtue of an election, fails as such to discharge a duty it owes to the public, can the individual members be held liable to an individual who is injured by the nonfeasance of the board? It may be stated generally that members of a corporate body, such as the board of commissioners, upon which a duty rests, cannot be held liable

for the neglect of duty of the body, and a refusal to perform a duty is the refusal of the body, and not the individuals comprising it; and, being an official duty, it is owing to the public and not to the citizens distributively."

The following authorities are cited: "5 Thompson Neg. (2d Ed.) 853; Monnier v. Godbold, 116 La. 165, 40 South. 604, 5 L. R. A. (N. S.) 463; Packard v. Voltz, 94 Iowa 277, 62 N. W. 757, 58 Am. St. Rep. 396; Hydraulic Brick Co. v. School Dist., 79 Mo. App. 665; Bassett v. Fish, 75 N. Y. 303; Bates v. Horner, 65 Vt. 471, 27 Atl. 134, 22 L. R. A. 824; Shearman & Redfield on Neg. (6th Ed.) Vol. 2, Sec. 340a; Cooley on Torts (3d Ed.) p. 756; Daniels v. Hathaway, 65 Vt. 247, 26 Atl. 970, 21 L. R. A. 377."

The authorities relied on by appellant are persuasive, but this rule does not appear to apply in cases where there is a duty regarded as ministerial or where a duty has been postively imposed by law and its performance required at a time or in a manner upon conditions which are specifically designated and the duty to perform under the conditions specified is not dependent upon the officer's judgment or discretion. In such cases the officer cannot rightfully dispense with any of the essential forms of proceedings which the Legislature has prescribed.

In First National Bank of Key West v. Filer, et al., 107 Fla. 526, 145 Sou. 204, it was said:

"That public officers should be held to a faithful performance of their official duties, and made to answer in damages to all persons who may have been injured through their malfeasance, omission or neglect, to which the persons injured have in no respect contributed, cannot be denied. Lick v. Madden, 36 Cal. 208, 95 Am. Dec. 175 (180). And it is well settled that where the law imposes upon a public officer the performance of ministerial duties in which a private individual has a special and direct interest, the officer

will become liable to such individual for any injury which he may proximately sustain in consequence of the failure or neglect of the officer either to perform the duty at all, or to perform it properly. In such a case the officer is liable as well for nonfeasance as for misfeasance or malfeasance. Mechem, *supra,* par. 664, page 445.

"Thus it was said by the Supreme Court of the United States in upholding the liability of a municipal officer for failure to levy a specific tax required to be levied to pay a judgment recovered against the municipality:

" 'The rule is well settled that where the law requires absolutely a ministerial act to be done by a public officer, and he neglects or refuses to do such act, he may be compelled to respond in damages to the extent of the injury arising from his conduct. There is an unbroken current of authorities to this effect. A mistake as to his duty and honest intentions will not excuse the offender.' Amy v. Supervisors, 11 Wall. (U. S.) 136, 20 L. Ed. 101.

"In the case at bar there was a clear legal duty on the defendants, as members of the Board of Public Instruction of Dade County, to proceed in a particular way with respect to the issuance of evidences of indebtedness for the purchase of school sites. This clear legal duty to proceed in a particular way to comply with the statutes, implied an equally clear legal duty not to proceed in any other way, and not to issue evidences of indebtedness, apparently valid on their face, and having the seal of the Board of Public Instruction attached thereto, unless the conditions warranting such issuance had been ascertained by them beforehand, to exist.

"The duty to comply with the indispensable legal formalities required to be observed in the issuance of public securities and evidences of indebtedness, in order to make them valid and bind the corporate body or board so issuing

them, is ministerial and non-discretionary in character. A neglect of that duty by proceeding in a manner in disregard of the law and to the special damage of another not a contributor to the default, therefore renders the participants in such illegal conduct liable in damages to the person specially injured by such omission or neglect. Lick v. Madden, *supra*.

"While in appropriate cases where the circumstances may justify it, a delinquent officer may plead and prove an honest mistake of law in mitigation of damages (Lone v. Long, 57 Iowa 497, 10 S. W. 875) he cannot entirely escape the consequences of his plain failure to comply with the law imposing upon him, or the public corporation or board of which he is a member, a positive non-discretionary legal duty, merely because the ensuing damage was caused by an act done or omitted under color of office, and not personally. The illegal act or omission of a public corporation or board of which the officer sued was a member, becomes the act of those members who actually participate in its consummation, and such officer members so participating in the illegal act or neglect may be sued and held liable personally for the resulting damage that may have been sustained by a person specially injured by the default in duty. Tritchelor v. Bergeson, *supra*."

We think that the amended bill in this case contains sufficient allegations to bring the case within the rule stated in the Filer case. Therefore, the allegations being sufficient to show that Dunn participated in the omission which has resulted in the loss of public funds, that he thereby breached the obligation of the bond to "faithfully perform all and singular the duties incumbent upon him by reason of his election or appointment as said Bond Trustee" and the breach of that condition cast liability upon the surety.

It follows that the paragraphs of the answer above

quoted state no defense. However, in view of the facts that the motion to strike was an attack on the whole answer, as well as parts thereof, and the order of the court was that "said answer is hereby stricken," whereas in the answer were certain admissions and denials, an order should not have been entered striking the whole answer because some of it was good as against the motion. Therefore, the order of the lower court striking the answer is reversed with directions to the chancellor to enter such order with reference to the various parts of the answer as to him should seem consistent with this opinion.

It is so ordered

TERRELL, C. J., and THOMAS, J., concur.

WHITFIELD, J., concurs in opinion and judgment.

Justices BROWN and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.