PIDGEON THOMAS IRON Co. *v.* LEFLORE COUNTY *et al.*[*]

(Division B.   April 21, 1924.)

[99 So. 677.   No. 23987.]

1. COUNTIES.   *County, political subdivision of state; in absence of statute county not liable for negligence of its officers.*

   A county is a political subdivision of the state, and, in the absence of a statute imposing liability therefor, it is not liable for the negligence of its officers.

2. COUNTIES.   *County not liable for failure to require bond protecting laborers and materialmen.*

   Chapter 217, Laws of 1918, which requires any contractor engaged in construction work for a county to execute a formal performance bond, with an additional obligation for the protection of laborers and materialmen, does not impose any liability on such

county, either expressly or by necessary implication, for the negligence of its officers in failing to require such bond.

3. COUNTIES. *Failure of board of supervisors to require bond does not render individual members liable for claims of laborers or materialmen.*

The failure of a board of supervisors to comply with a statute directing the taking of a bond from a contractor for public work, conditioned for the payment of all indebtedness for labor and material, upon which bond any person to whom there is due any sum for labor or material furnished may bring an action, does not render the members of such board individually liable for the payment of the claims of laborers or materialmen.

4. COUNTIES. *Surety on bond submitted with bid not liable to laborers and materialmen.*

Where a bidder for public work for a county submitted with his bid a bond conditioned that, in the event the contract was awarded to such bidder, he would execute a formal contract and a bond for the performance of the terms and conditions thereof, the surety on such bond did not become liable for the payment of claims for labor and material furnished for the work, where the county permitted the contractor to enter upon and complete the work without requiring the execution of a formal contract or a bond for the protection of laborers and materialmen as required by chapter 217, Laws of 1918.

---

*Headnote 1.   Counties, 15 C. J., sections 1, 274;   2.   Counties, 15 C. J., section 274;   3.   Counties, 15 C. J., section 132;   4.   Counties, 15 C. J., section 254.

APPEAL from Leflore chancery court.

HON. C. L. LOMAX, Chancellor.

Suit by the Pidgeon Thomas Iron Company against Leflore county and others. From a decree sustaining demurrers to the bill of complaint, plaintiff appeals. Affirmed.

*Gardner & Gardner,* for appellant.

The surety company is liable, for the reason that the condition of the "bidder's bond" which was made by the surety company, and which was the inducement for the acceptance of the bid of the Larimer & Burgett Bridge Company, has never been complied with. It will be noticed that the condition is, that in the event the contract is awarded to the principal—which was done—the principal, the bridge company, would execute and enter into a formal contract within the time required—which it did—and "furnish good and sufficient surety to secure the performance of the terms and conditions of the contract" *which it never did,* and this is the breach that we say makes the surety company liable for the damages which appellant sustained, by reason of the failure on the part of the bridge company to give the security required by the statute.

The surety company is not in a position to take advantage of the failure to be notified after this bond was not given by the bridge company. It was the duty of the surety company to follow up its obligation and see that the terms of the bond were carried out, that is to say, that the bond was given, and having failed to do this, it is now, estopped from denying liability.

In case of ambiguity, or doubtful construction, the bond should be construed in the light of circumstances surrounding the execution thereof, the object to be accomplished, the situation of the parties and the relations existing between them. 9 C. J., page 33; 84 C. C. A. 630, 61 So. 642. The nature of the duty of the obligor and the character of the obligee must also be regarded as explanatory of the intent. 74 Am. Dec. 541.

The law at the time of the execution of this bond is a part of it just as much so as if it had been inserted in it, and if the law gives the bond a certain legal effect, it is as much a part of the bond as if its terms were incorporated therein. Chapter 217, Laws of 1918 (this statute), when this "bidder's bond" was made, entered into and became a part of the contract, or obligation assumed

by the surety company in the execution of the "bidder's bond," just as much so as if incorporated in terms therein. 9 C. J., page 34; 30 S. E. 67; 134 S. W. 951; 108 S. W. 548; 20 So. 587.

*Building and Construction Contracts.* The general rules governing the rights, duties and liabilities of sureties in other cases apply to sureties on a builder's bond, the sureties being bound only where their promise is supported by a sufficient consideration, and only in the manner and to the extent provided in the obligation as construed together with other instruments to which it refers; and where the language of the bond is that selected by the surety, *it must be given the strongest interpretation which it will reasonably bear in favor of the insured.* 163 S. W. 1171.

Mechanics and materialmen have a lien for which they have a right to sue on the bond given the county. Laws 1918, ch. 128; Hemingway's Supplement, sec. 2434; 15 C. J. 558, 15 C. J. 561, sec. 263, also sec. 254; *American Surety Co.* v. *Huey,* 191 S. W. 617.

*Liability of Leflore County.* We have some doubt as to whether or not Leflore county, or the members of the board of supervisors, officially or individually, are liable, but, we are going to give the court the benefit of our investigation, and submit the matter. In many states it is held that the failure to give the bond renders the county and its officers liable to the materialmen. 15 C. J., page 559, sec. 254; 97 Minn. 487, 107 N. W. 560, 115 Tenn. 639, 91 S. W. 1011; 22 Wash. 106, 60 Pac. 139; 171 N. C. 551; 142 Mich. 637; 67 Mich. 43; 158 Mich. 678; 105 Tenn. 581; 72 Mich. 295; 15 Corpus Juris, 558.

*Pollard & Hammer, Means Johnston,* and *Wm. M. Hall,* for appellees.

I. *The bond inures only to the named obligee:* Scott v. *Alton Banking & Trust Company,* 175 S. W. 920; *Birckhead* v. *Brown,* 5 Hill (N. Y.) 634. Numerous other cases along the same lines are grouped in note in 1 A.

L. R., pages 866 to 870, inclusive, under the subhead Special Guaranty, See also 9 C. J. 85. We submit, therefore, that Leflore county, or more strictly speaking, the board of supervisors of Leflore county, the obligee named in the bond, is the only board or group who could have demanded anything of the bond company by reason of the execution of the bidder's bond; that neither the appellant here, nor any other materialman or laborer, had anything to do with the bidder's bond, and obtained no rights under it.

II. *No notice was given to the bond company that the bridge company had been awarded the contract, and no contractor's bond was demanded of the bond company.* To bind the bond company, even to Leflore county, notice by Leflore county should have been given that its guaranty was accepted and that its principal had been awarded the contract. The bidder's bond, at best, was simply an offer of guaranty, and a surety can never be held beyond the terms of his engagement, and every guarantor has a right to stand on the strict terms of his obligation. *Davis* v. *Wells Fargo & Company,* 26 L. Ed. 688; *Russell* v. *Clark,* 7 Cranch 69; *Davis Sewing Machine Company* v. *Richardson,* 29 L. Ed. 480. See also note on Conditional Guaranty, 16 L. R. A. (N. S.), page 367; *German Savings Bank* v. *Drake Roofing Company,* 84 A. S. R. 337; Note 105 A. S. R., page 513 and 514; *Montgomery* v. *Kellogg,* 43 Miss. 492; *Ellis* v. *Jones,* 70 Miss. 61.

III. *A materialman acts at his peril if he fails to ascertain if a contractor's bond for his protection is in existence*: *Woodward Lumber Company* v. *Grantville,* 79 S. E. 221, cited in Ann Cas. 1917B, 1090; *Bushnell* v. *Haynes,* 156 Pac. 343; *Blanchard* v. *Burns,* 49 L. R. A. (N. S.) 1201.

We submit in conclusion that by no process of reasoning can we conceive that any liability can attach to the bond company for a failure on the part of the board of

supervisors to do their official duty, and by no process of reasoning or construction of the statute can we conceive that the surety on a bidder's bond can be held liable on a claim which could only be asserted on a contractor's bond which was never executed.

*Means Johnston,* for appellants, in reply.

I.   The general rule is that a county, in the absence of express statutory provisions is not liable for torts and negligence in the condition, use, and management of public institutions. *Mary Davies* v. *County,* 1916B. L. R. A. 1261, and note; *Jefferson County* v. *Grafton,* 74 Miss. 435, 21 So. 247, 60 A. S. R. 516, and 36 L. R. A. 798; *Brabham* v. *Board of Supervisors Hinds County,* 54 Miss. 363.

II.   *A county can have no liability, except as authorized, expressly, or by necessary implication, by some statute.* Counties are political subdivisions of the state, created for convenience. *They are not corporations with the right to sue and be sued as an incident to their being,* but are *quasi*-corporations, invested by statute with certain powers, and subject to certain liabilities, and can neither sue nor be sued, except as authorized by statute. The right to maintain a suit like this is not only outside of the contemplation of the statute, but is opposed by every consideration of public policy. *Nugent et al.* v. *Board Miss. Levee Commissioners,* 58 Miss. 197; *Redditt* v. *Wall,* 53 So. 45, 34 L. R. A. (N. S.) 152; *Harrison County* v. *Marione,* 110 Miss. 592, 70 So. 702; *Grenada* v. *Grenada County,* 115 Miss. 831, 76 So. 682; *Stephen* v. *Beaver Dam Drainage District,* 123 Miss. 884, 86 So. 641.

For the construction and decisions of the courts of other states, involving similar chapters to chapter 217 of the Laws of 1918, involving the liability of counties for the failure of the board of supervisors to require the formal construction bonds as provided. see: *Fore, Receiver, etc.,* v. *Feimster et al., Board of Commissioners*

*of Iredell County,* cited in 1916 (F) L. R. A. 481; *Bushnell* v. *Haynes,* 156 Pac. 343; *Reinhardt & Donovan Co.* v. *Board of Commissioners of Choctaw County,* 173 Pac. 848; *Moss Iron Works, et al.,* v. *Jackson County, et al.,* 109 S. E. 343.

III. *The board of supervisors were acting in their official capacity at the time of the negligence complained of, and not in their individual capacity, and appellant had constructive notice of the failure of said contractors to file said formal construction bond. Jefferson County* v. *Grafton,* 74 Miss. 435. The question of the individual liability of a public officer for the wrongful acts of a corporate body of which he is a member has not often been presented to the courts for adjudication. The *rule, however, appears to be established that a public officer, who is a member of a corporate body upon which a duty rests, cannot be liable for the neglect of the duty of that body. If there be a refusal to exercise the powers of such body, it is the refusal of the body, and not of the individuals composing it. The official action of its different members is merged into the official action of the board itself as an entity.* 22 Page 487; *Moner* v. *Godbold,* 116 La. 165, 40 So. 604, 5 L. R. A. (N. S.) 463; *Blanchard Appt.* v. *George E. Burns et al.,* 62 S. W. (Ark.) 63, also 49 L. R. A. (N. S.) 1199; *Hydraulic Press Co.* v. *School District,* 79 Mo. App. 665; *Bassett* v. *Fish,* 75 N. Y. 303; *Monnier* v. *Godbold,* 116 La. 165, 5 L. R. A. (N. S.) 463, 40 So. 604, 7 Ann. Cases 768; *Blanchard* v. *Burns,* 162 S. W. 63, 49 L. R. A. (N. S.) 1199; *Packard* v. *Volts et al.,* 62 N. W. 757; *Worden* v. *Witt,* 4 Idaho 404, 39 Pac. 1114; *Youmans* v. *Thornton,* 31 Idaho 10, 168 Pac. 1141; *Bushnell* v. *Haynes et al.,* 56 Okla. 592, 156 Pac. 343.

If the court will examine appellant's cases, with only one or two exceptions, these decisions will be found to be based upon statutes, which expressly provide, for the liability of the county or the board individually, for their

negligence and failure to require said construction bond
to be filed; that in all of the states, where the liability
is not made so by express provision of the statute, or by
necessary implication, the courts have held that the board
was neither liable officially, nor in their individual ca-
pacity.

Cook, J., delivered the opinion of the court.

This is an appeal from a decree of the chancery court
of Leflore county sustaining the demurrers of appellees,
defendants below, to the bill of complaint of the Pidgeon
Thomas Iron Company, appellant, filed against Leflore
county, the members of the board of supervisors of Le-
flore county, individually, and the United States Fidelity
& Guaranty Company, surety. The appellant filed its
bill charging that the board of supervisors of Leflore
county advertised, as the law directs, for bids for the
construction of a certain concrete bridge in said county,
according to plans and specifications on file in the office
of the clerk of said board, and at the same time required
that the bidders should file with their proposals a surety
bond, in the sum of two thousand five hundred dollars,
conditioned according to law; that the Larimer & Bur-
gett Bridge Company, in answer to said advertisement,
filed its proposal for said work with the clerk of the
board, and at the same time filed with its proposal its
bidder's bond as required by the advertisement for bids,
in the sum of two thousand five hundred dollars, with
the United States Fidelity & Guaranty Company as
surety, conditioned that in the event the said contract
should be awarded to the said Larimer & Burgett Bridge
Company, that the said bridge company would there-
after execute and enter into a formal contract, within
the time required by law, for the construction of said
work, and execute a good and sufficient bond as required
by law for the performance of the terms and conditions
of said contract; that said proposal by the said Larimer

& Burgett Bridge Company was accepted by the board of supervisors and the contract made with the said bridge company for the erection and construction of said work.

The bill further charged that the bidder's bond filed with the proposal by the said Larimer & Burgett Bridge Company was executed by the United States Fidelity & Guaranty Company as surety, and was conditioned as follows:

"Whereas, the said principals have submitted to board of supervisors of Leflore county, Mississippi, a proposal for certain bridge work; and

"Whereas, it is required by the advertisement for proposal of said work that these presents accompany the proposal, now, therefore, the condition of this obligation is such that if, in event of the contract for certain bridge work being awarded the said principals, the principals shall execute and enter into a formal contract within the time required and will furnish good and sufficient surety to secure the performance of the terms and conditions of the contract, then this obligation to be void, otherwise to remain in full force and effect."

The bill further charges that the work was done according to the plans and specifications and that upon completion of said work the same was accepted and paid for at the contract price by the board of supervisors, and the Larimer & Burgett Bridge Company thereafter released from any further liability to said county, and that more than six months had elapsed from the date of such acceptance and payment.

The bill further avers that the appellant is engaged in the business of furnishing material for the erection and construction of bridges, and that at the request of the said Larimer & Burgett Bridge Company it furnished certain material which was used and entered into the construction of said work, amounting in the aggregate to one thousand three hundred ninety-eight dollars and ninety-eight cents; that this amount had never been paid; that the said Larimer & Burgett Bridge Company

is insolvent, and consequently the appellant was unable to collect from the bridge company the amount due it for the material furnished in the erection and construction of the bridge.

The bill further avers that under chapter 217, Laws of 1918, after the execution of the said bidder's bond by the successful bidder, the said board of supervisors should have required a formal construction bond from the Larimer & Burgett Bridge Company for the protection of materialmen, and that the said board in disregard of its duty under said act, negligently and carelessly, and in disregard of the rights of the appellant, neglected to require said contractors to execute the bond as required by said statute, and permitted the said contractors to enter into said contract and complete the same without giving any security therefor, by bond or otherwise, for the payment of materialmen, and that in consequence there is now no fund available for the creditors of the said contractor to collect the money for labor and material furnished, and that, as a result of the negligence and carelessness of the said board of supervisors and Leflore county, said county and the board of supervisors, officially and individually, have become liable to the appellant for the amount furnished by it to the contractors for material used in the construction of the bridge.

The bill further charged that the condition named in the bidder's bond to-wit:

"The principals shall execute and enter into a formal contract within the time required; and will furnish good and sufficient surety to secure the performance of the terms and conditions of the contract."—has been breached, and as a consequence of the violation of the condition of said bond, which inured to the benefit of appellant, a right of action has accrued to the appellant and the other creditors of the said bridge company, under chapter 217, Laws of 1918, against the United States Fidelity & Guaranty Company, surety, for the amount

of material furnished in the erection and construction of said bridge.

The bill further charges that Leflore county and its board of supervisors, officially and individually, are liable to appellant for the amount of said material furnished to the contractor, by reason of the failure of the county and the board to require the execution of the bond required by chapter 217, Laws of 1918, and also charges that, in addition to the liability of the county and the board of supervisors, the United States Fidelity & Guaranty Company is also liable to appellant for the amount of material furnished by it because of the breach of the condition in the said bidder's bond, and prays for a decree against all of the defendants or such of them as the court may find to be liable, and for general relief.

Each of the defendants demurred to the bill of complaint, the demurrers were sustained by the court, and complainant refusing to amend, the bill was dismissed, and from this decree this appeal was prosecuted.

The appellant in its bill of complaint seeks to fasten liability on the county and on the board of supervisors, individually, for the reason that the board neglected and failed to require the contractor to execute the formal construction bond as required by chapter 217, of the Laws of 1918; the provisions of this act being, in part, as follows:

"Any person entering into a formal contract with this state, any county thereof, municipality therein, or any political subdivision whatsoever therein, for the construction of any building or work or the doing of repairs, shall be required before commencing same to execute the usual bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying labor or material therefor; and any person who has furnished labor or materials . . : and wherefor payment has not been made, shall have the right to

intervene and be made a party to any action instituted on such bond, and to have their rights adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the obligee." Section 1.

The first question that arises is whether or not a county is liable for the neglect or failure of its officers to require a contractor who is engaged in construction work for such county to furnish a formal construction bond, with an additional obligation for the protection of persons furnishing labor or material to such contractor.

Counties are political subdivisions of the state, created for the purpose of discharging public duties, and it is settled by numerous decisions of this court that no suit can be maintained against a county for the negligence of its officers unless such liability is created by some statute, expressly or by necessary implication. In the case of *Brabham* v. *Supervisors,* 54 Miss. 363, 28 Am. Rep. 352, the court said:

"A county can have no liability except as authorized, expressly or by necessary implication, by some statute. Counties are political divisions of the state, created for convenience. They are not corporations with the right to sue and be sued as an incident to their being, but are *quasi*-corporations, invested by statutes with certain powers, and subject to certain liabilities, and can neither sue nor be sued, except as authorized by statute."

In *Redditt* v. *Wall* (Miss.), 55 So. 45, 34 L. R. A. (N. S.) 152, the court held that: "All the duty which a county owes to any member of the public is prescribed by statute, and all the liability which can be imposed upon it must be found in the same authority."

In *City of Grenada* v. *Grenada County,* 115 Miss. 831, 76 So. 682, it was said that: "There can be no liability against either the state or a county unless it be expressly or impliedly created by statute."

Again, in *Stephens* v. *Beaver Dam Drainage District,* 123 Miss. 884, 86 So. 641, the court said: "In the absence of a valid statute imposing liability therefor, a public corporation created *in invitum* for the purpose of discharging a public function is not liable for the negligence of its officers, agents, or employees."

For the application of the same doctrine see, also, *Jefferson County* v. *Grafton,* 74 Miss. 435, 21 So. 247, 36 L. R. A. 798, 60 Am. St. Rep. 516; *Nugent et al.* v. *Board of Levee Commissioners,* 58 Miss. 197; *Harrison County* v. *Marione,* 110 Miss. 592, 70 So. 702; *Ayres* v. *Board of Trustees* (Miss.), 98 So. 847.

Chapter 217 of the Laws of 1918, which requires any contractor engaged in construction work for a county to execute a formal construction bond, with an additional obligation for the protection of laborers and materialmen, does not impose any liability on such county, either expressly or by necessary implication, for the negligence of its officers in failing to require such bond, and, since there is no other statute imposing such liability, it follows that the decree of the court below sustaining the demurrer of the county is correct.

The next question presented for decision is: Did the failure of the board of supervisors to take the bond required by chapter 217 of the Laws of 1918 constitute such negligence on the part of the members of such board as to render them individually liable to the plaintiff for the value of material furnished the contractor?

The board of supervisors of a county is created by statute for special purposes, and it exercises only such powers as are conferred by statute, either expressly or by implication, and it is charged with the performance of such duties as are imposed by statute. In the discharge of the duties imposed upon the board the members thereof act in an official and not an individual capacity, and any neglect or failure in the exercise of its powers or discharge of its duties is the default of the board, and

not of the individuals composing it, and they are not liable for such default unless made so by statute. Chapter 217, Laws of 1918, does not in terms impose any duty upon the members of the board as individuals, but only as officials representing the public, and it does not impose any individual liability for the defaults of the board in respect to the duties thereby imposed upon it.

In 22 R. C. L., p. 487, in discussing the question of the individual liability of a public officer for the wrongful acts of a corporate body of which he is a member, it is said:

"The rule, however, appears to be established that a public officer, who is a member of a corporate body upon which a duty rests, cannot be held liable for the neglect of duty of that body. If there be refusal to exercise the power of such body, it is the refusal of the body, and not of the individuals composing it. The official action of its different members is merged into the official action of the board itself as an entity."

In the case of *Hydraulic Press Brick Co.* v. *School District,* 79 Mo. App. 665, the court of appeals, in discussing a similar question, used the following language: "In the letting of the contract and in their failure to take the bond of the contractors, the directors did not act as individuals engaged in the enterprise of erecting a building but as a board of directors through which the school district manifested its will,"—and it was held that the individual directors were not individually liable.

In *Bassett* v. *Fish,* 75 N. Y. 303, the court said: "But it is not seen how a member of a corporate body, upon which body a duty rests, can be held individually liable for the neglect of its duty by that body. There is no duty upon him to act individually. His duty is as a corporator, and it is to act in the corporation in the way prescribed for its action, and by the use of its powers and means. And if there is neglect to exert its powers or all its means, it is the neglect of the body and not of the individuals composing it."

This language of the New York court was quoted with approval in the case of *Monnier* v. *Godbold,* 116 La. 165, 40 So. 604, 5 L. R. A. (N. S.) 463, 7 Ann. Cas. 768, in which a similar question was under consideration. For an application of the same doctrine see, also, *Blanchard* v. *Burns,* 110 Ark. 515, 162 S. W. 63, 49 L. R. A. (N. S.) 1199.

In the absence of an express declaration of legislative intention to impose individual liability on the members of a board of supervisors for the defaults of the board, we think it is clear that none exists, and that the demurrer filed on behalf of the members of the board was properly sustained.

The last question presented for decision, and the one raised by the demurrer of the United States Fidelity & Guaranty Company, surety on the bidder's bond, is whether, by reason of the provision of chapter 217, Laws of 1918, requiring construction bonds to contain an obligation for the protection of laborers and materialmen, the surety on the bidder's bond became liable to a materialman on account of the failure of the contractor to execute this bond.

Section 361, Code of 1906 (section 3734, Hemingway's Code), provides that all contracts by boards of supervisors for any public work, where the amount of the contract shall exceed fifty dollars, shall be made upon public notice and proper advertisement, stating the work to be done, and inviting sealed proposals therefor, to be filed with the clerk, and that the board shall award the contract to the lowest bidder, who shall comply with the terms imposed by the board, and enter into bond with sufficient sureties, to be approved by the board, in such penalty as may be fixed by such board, but in no case to be less than the contract price, conditioned for the prompt, proper, and efficient performance of the contract. This is the "usual" bond referred to in chapter 217, Laws of 1918, and which by that act is required to con-

tain "the additional obligation that such contractor shall promptly make payments to all persons supplying labor or material" for the work. There is no statutory requirement that the advertisement for bids for public work shall require a bond to accompany such bids when filed, and the bond executed by the appellee surety company and submitted with the successful contractor's bid or proposal is not one required by statute. The bond was conditioned to guarantee that, in the event the contract should be awarded to the principal obligor, such principal would, within such time as might be fixed by the board, execute and enter into a formal contract, and furnish good and sufficient surety to secure the performance of the terms and conditions of the contract, and it is common knowledge that it is almost the universal custom, and a very wise one, to require some sort of security to guarantee the county against irresponsible bidders, who might fail to qualify for the performance of the work, by entering into a formal contract and furnishing the statutory performance bond. The bond is conditioned for the protection of the county, the sole obligee therein, and it is not for the benefit or protection of persons furnishing material to the contractor, who are not parties thereto and have no rights therein, either by the express terms of the obligation or by statutory enactment. The board of supervisors had the right, as was its duty, to have required the contractor to execute the performance contract and bond before it was permitted to begin the work, and upon the failure or refusal of the contractor so to do the county would have been entitled to recover of the bondsmen all loss or damage suffered by it by reason of such failure. The board of supervisors, however, permitted the contractor to enter upon the performance of the work without having executed either a formal contract or a bond for the satisfactory performance of the work, and it was completed according to the plans and specifications and to the entire satisfaction of the

board.  As to whether or not the county could have maintained an action upon this bond in the event it had suffered loss by reason of the contractor's failure to satisfactorily complete the contract after being permitted to begin the work without complying with the preliminary statutory conditions, it is unnecessary to decide, but we think it is clear that laborers and materialmen, who were in no way parties to the bond, and whose only rights arise under the statutory bond provided for by chapter 217, Laws of 1918, cannot do so.

It follows from the views herein expressed that the decree of the court below must be affirmed.

*Affirmed.*