# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CA-01748-SCT

*BERTRAM HILL, INDIVIDUALLY, JENANNE
MOONEYHAN AND RACHAEL PHILLIPS, AS
WRONGFUL DEATH BENEFICIARIES OF
DAVID MOONEYHAN*

*v.*

*CITY OF HORN LAKE, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/04/2012 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JOHN THOMAS LAMAR, III |
| | JOHN THOMAS LAMAR, JR. |
| | JOSEPH HARLAND WEBSTER |
| | RALPH EDWIN CHAPMAN |
| ATTORNEY FOR APPELLEE: | ROY JEFFERSON ALLEN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 01/15/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.    The City of Horn Lake ("the City") contracted with Phillips Construction Company

and its owner Michael Phillips (collectively "Phillips") to work on a sewer project.  Two

employees of Phillips, Bertram Hill and David Mooneyhan, were working near the bottom

of a trench that was seventeen feet deep when the walls of the trench suddenly collapsed.

Mooneyhan was killed, and Hill was injured. Mooneyhan's beneficiaries and Hill

(collectively "Plaintiffs") sued the City for Phillips's negligence under *respondeat superior*

and also alleged that the City had negligently hired Phillips. The circuit court properly granted summary judgment in favor of the City, and we affirm.

**Facts and Procedural History**

¶2.	On October 28, 2008, a trench being constructed in connection with the City's Chapel Hill Sewer Installation Project ("project") collapsed on itself, causing serious injury to Bertram Hill and death to David Mooneyhan. Two city employees who were at the site to deliver supplies witnessed the event. Hill and Mooneyhan had been performing work near the bottom of the trench as part of their employment with Phillips. Phillips did not have general liability insurance coverage at the time of the trench collapse. Since that time, OSHA has investigated Phillips for possibly violating federal regulations in connection with its work on the project.

¶3.	Phillips and the City never reduced to writing the agreement for the project's completion, but the record provides ample information about the agreement. The project was to be completed on a cost-plus basis, and Phillips ultimately requested $9,678 for its work.[1] Interrogatory responses from Phillips and depositions of Calvin Shields, the City's Director of Operations, shed additional light on the nature of the agreement. Via interrogatory responses, Phillips testified that his company was an independent contractor for the City and

---

[1] The fact that the contract was "cost-plus" indicates that, had Phillips determined additional materials were needed, it would have been able to purchase the materials and then bill the City for them. The invoice Phillips submitted to the City stated that the price included "all material for complete job, all equipment and labor on what part was completed including time and equipment on engineering part." However, in the aftermath of the collapse, the City hired another construction company to complete the project. While the City paid Phillips only $9,678, the total cost of the project was approximately $34,000 once the second construction company was paid.

2

that the City did not participate in the construction or direct the manner or means by which the work was done. Shields testified that the City would inspect the site only if the contractor requested an inspection. Shields testified that city employees had visited the site only twice during the course of the project.

¶4. Plaintiffs filed a complaint against the City on August 4, 2009, alleging that the City was liable for Phillips's negligence on the basis of *respondeat superior* and also for its own negligence in maintaining the site. On February 9, 2012, the City moved for summary judgment on the following grounds: (1) Plaintiffs contended that Hill and Mooneyhan were employees of the City, thus rendering their claims subject to the exclusive remedy provision found in the Mississippi Workers' Compensation Act; (2) Phillips was an independent contractor, not an agent, so the City could not be liable to Plaintiffs under *respondeat superior*; and (3) the discretionary function exemption of the Mississippi Tort Claims Act ("MTCA") rendered the City immune from liability for maintenance of a sewer system.

¶5. In response to the City's motion for summary judgment, Plaintiffs admitted that Hill and Mooneyhan were not employees of the City, thus rendering the City's defense under the Mississippi Workers' Compensation Act moot. Plaintiffs argued that the City was not immune from liability under the discretionary function exemption because the City still had a duty to warn of dangerous conditions. Finally, they added that the City was liable under Mississippi Code Section 31-5-51(7), which requires any person entering into a formal contract with a city that exceeds $25,000 to furnish proof of general liability insurance coverage. Miss. Code Ann. § 31-5-51(7) (Rev. 2010). The City argued that the statute was inapplicable because the contract amount was only $9,678, well below the $25,000 threshold.

3

¶6.    The circuit court granted the City's motion for summary judgment on all issues, holding that Plaintiffs had not established the City had more than a supervisory role over the project, that the City's maintenance of a sewer system is a discretionary function, and that the burden under Mississippi Code Section 31-5-51(7) is placed on the contractor, not the City.  Plaintiffs appealed.

¶7.    We requested supplemental briefing from the parties on the following issues: (1) whether the contract, if any, between Horn Lake and Phillips was void and unenforceable as a matter of public policy because it was formed in violation of Mississippi Code Section 31-7-13; (2) whether the existence of an enforceable contract is a prerequisite for the existence of independent-contractor status for the purposes of determining whether Horn Lake is vicariously liable for the negligence, if any, of Phillips; and (3) whether the Court's opinion in *Little v. Mississippi Department of Transportation*, 129 So. 3d 132 (Miss. 2013), has any effect on whether Horn Lake enjoyed discretionary immunity.

**Standard of Review**

¶8.    The standard of review for a grant or denial of summary judgment is *de novo*. *Ladnier v. Hester*, 98 So. 3d 1025, 1027-28 (¶ 9) (Miss. 2012).  Courts determine whether summary judgment is proper by considering whether "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Miss. R. Civ. P. 56(c).  A fact is material if it "tends to resolve any of the issues properly raised by the parties."  *Moss v. Batesville Casket Co.*, 935 So. 2d 393, 398 (¶ 16) (Miss. 2006).  Issues of fact exist when one can draw more than one reasonable

4

inference from uncontradicted facts. ***Ladnier***, 98 So. 3d at 1029 (¶ 14). The moving party has the burden of demonstrating the absence of a genuine issue of material fact. ***Id.*** at 1028 (¶ 10). If there is any doubt as to the existence of a genuine issue of material fact, the benefit goes to the nonmoving party. ***Id.*** at (¶ 9). However, the nonmoving party may not rest on mere allegations or denials in the pleadings, but must set forth specific facts showing that there are genuine issues for trial. ***Pigg v. Express Hotel Partners, LLC***, 991 So. 2d 1197, 1199 (¶ 4) (Miss. 2008).

**Discussion**

¶9.     The DeSoto County Circuit Court granted the City's motion for summary judgment on the following grounds: the City had no liability under *respondeat superior*; the City was exempt from liability because the maintenance of a sewer is a discretionary function; and the City was not liable for negligence in hiring Phillips. Plaintiffs raise the following issues on appeal: (1) whether the circuit court erred by holding that the City cannot be vicariously liable for the actions of Phillips because Phillips was an independent contractor; (2) whether the circuit court erred by dismissing Plaintiffs' negligent hiring and *per se* negligence claims by ruling that the City has no liability under Mississippi Code Section 31-5-51(7); and (3) whether the circuit erred by dismissing the City as a defendant based on the discretionary function of the MTCA. Additionally, in response to the parties' supplemental briefs, the Court finds it appropriate to discuss whether the contract, if any, between Horn Lake and Phillips was void and unenforceable as a matter of public policy because it was formed in violation of Mississippi Code Section 31-7-13.

5

**I. Whether the circuit court erred by holding that the City cannot be vicariously liable for the actions of Phillips because Phillips was an independent contractor.**

¶10. The City may be vicariously liable for Phillips's negligence if there was a master-servant relationship between the two entities when the trench collapsed. *See Richardson v. APAC-Miss., Inc.*, 631 So. 2d 143, 151 (Miss. 1994). However, the City may not be vicariously liable for Phillips's negligence if Phillips was merely an independent contractor of the City. *See Hodges v. Attala County*, 42 So. 3d 624, 626 (¶ 6) (Miss. Ct. App. 2010). Plaintiffs would bear the burden at trial of proving the City vicariously liable for Phillips's negligence, if any, and accordingly bear the burden here of producing evidence to demonstrate the existence of a disputed material fact on the issue. *Webster v. Miss. Publishers Corp.*, 571 So. 2d 946, 949 (Miss. 1990); *Fruchter v. Lynch Oil Co.*, 522 So. 2d 195, 198 (Miss. 1988).

¶11. A servant is "a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master." *Richardson*, 631 So. 2d at 148. An independent contractor is defined as "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." *Id.* In short, the difference between a master-servant relationship and an independent-contractor relationship is that an employer in a master-servant relationship has control of, or the right to control, the employee in the details of the work. *See Miller v. R.B. Wall Oil Co., Inc.*, 970 So. 2d 127, 132 (¶ 15) (Miss. 2007); *Stewart v. Lofton Timber Co., LLC*, 943 So. 2d 729, 734 (¶ 15) (Miss. 2006). In

6

determining whether an employer has the right of control over the employee, the Court should consider what the employer was entitled to do under the contract, as opposed to what the employer actually did. *Richardson*, 631 So. 2d at 150 (quoting *Kisner v. Jackson*, 159 Miss. 424, 132 So. 90, 92 (1931)).

¶12.    That Phillips and the City understood their relationship to be that of an independent contractor is not controlling. An employer may not escape liability to adversely affected third parties by drafting a contract that labels its employee an independent contractor. *McCary v. Wade*, 861 So. 2d 358, 363 (¶ 12) (Miss. Ct. App. 2003) (quoting *McKee v. Brimmer*, 39 F.3d 94, 98 (5th Cir. 1994)). Therefore, the Court must consider whether the facts of the case – taken in a light most favorable to Plaintiffs – trigger a master-servant relationship.

¶13.    The distinction between a servant and an independent contractor is a difficult one to make and has been described by the Court as "elusive." *Richardson*, 631 So. 2d at 148 (citation omitted)). However, the Court has provided the following factors to consider in determining whether a person is an independent contractor:

> [(1)] Whether the principal master has the power to terminate the contract at will; [(2)] whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; [(3)] whether he furnishes the means and appliances for the work; [(4)] whether he has control of the premises; [(5)] whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; [(6)] whether he has the right to prescribe and furnish the details of the kind and character of the work to be done; [(7)] whether he has the right to supervise and inspect the work during the course of the employment; [(8)] whether he has the right to direct the details of the manner in which the work is to be done; [(9)] whether he has the right to employ and discharge the subemployees and to fix their compensation; and [(10)] whether he is obliged to pay the wages of said employee.

7

*Richardson*, 631 So. 2d at 148-49 (quoting *Kisner*, 132 So. at 91); *see also* ***Heirs & Wrongful Beneficiaries of Branning ex rel. Tucker v. Hinds Cmty. Coll. Dist.***, 743 So. 2d 311, 316-17 (¶ 29) (Miss. 1999).

¶14.    Plaintiffs have not produced evidence sufficient to create an issue of material fact as to whether the City is vicariously liable for Phillips.  Plaintiffs and the City agree that the workers on the project were Phillips's employees, not the City's.  Further, Phillips was responsible for obtaining its own equipment to complete the project.  Even though the City reimbursed Phillips for the expense of renting the equipment, the record does not indicate that Phillips had anything but full discretion in choosing the equipment used for the project.  In response to the City's request for admission, Phillips also admitted that the City did not assist in construction.  The City's Director of Operations testified that city employees made only two visits to the site before the trench collapsed and that it was Phillips's responsibility to request inspections.

¶15.    While the City may have had the right to inspect the site more frequently than it did, the right to inspect, in itself, is not sufficient to trigger a master-servant relationship.  *See* ***Chisolm v. Miss. Dep't of Transp.***, 942 So. 2d 136, 141 (¶ 8) (Miss. 2006) (holding that the parties had an independent-contractor relationship even though the contract authorized the defendant to inspect all work and materials); *see also* ***Casement v. Brown***, 148 U.S. 615, 662 (1893) (finding that the status of independent contractor was not affected by the fact that "the contract provided for their daily supervision and approval of both material and work").

¶16.    However, Plaintiffs argue that the City was involved in the planning stage of the project.  They point out that Phillips denied the City's request to admit that the City did not

assist in the engineering, the "design and repair," and the "preparation of specifications or drawings" of the project. Phillips also denied the request to admit that the City did not assist in decisions concerning the methods, dimensions, procedures, and depths of the project. However, involvement at the planning stage is not enough to trigger a master-servant relationship. *See, e.g., Chisolm*, 942 So. 2d at 141-42 (¶ 9) ("While the construction work had to comply with MDOT's specifications and the traffic control plan . . . . [b]ased on the clear language of the contract, we agree . . . that Great River was an independent contractor.").

¶17. Further, denials of requests for admission do not have the same probative value as admissions. *See* Miss. R. Civ. P. 36(b) ("Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission."). *See also Young v. Smith*, 67 So. 3d 732, 742-43 (¶ 22) (Miss. 2011); *Shell Oil Co. v. Murrah*, 493 So. 2d 1274, 1276-77 (Miss. 1986). Unlike admissions, denials in response to a request for admission are not competent summary judgment evidence. *See Barragan v. Mosler*, 872 S.W.2d 20, 22 (Tex. App. 1994); *City of Richland Hills v. Bertelsen*, 724 S.W.2d 428, 431 (Tex. App. 1987).

¶18. In *Chisolm v. Mississippi Department of Transportation*, we held that an independent-contractor relationship existed, and the governmental body in that case exercised a greater amount of control than the City did here. *See Chisolm*, 942 So. 2d 136. In *Chisolm*, survivors of a driver killed in an automobile accident brought an action against the Mississippi Department of Transportation ("MDOT") and the contractor hired by MDOT to replace a bridge with an underground box culvert. *Chisolm*, 942 So. 2d at 139 (¶ 2). The

9

contract between MDOT and the contractor allowed inspectors employed by MDOT to inspect all work done and the materials used, although they were not "to act as foreman for the contractor." *Id.* at 141 (¶ 8). The contract also provided that the contractor's work "consists of complying with the contract requirements of the Department's Traffic Control Plan." *Id.* at 141 (¶ 8). Nevertheless, the Court found the contractor in *Chisolm* to be an independent contractor, and not an employee, of MDOT. *Id.* at 141 (¶ 8).

¶19.   The Court of Appeals reached the same decision in *Hodges v. Attala County*. That case also involved a car accident in which the decedent crashed into a culvert at a construction site. *Hodges*, 42 So. 3d at 624 (¶ 1). The Court of Appeals found the contract language in *Hodges* to be substantially similar to the contract language in *Chisolm*. *Id.* at 627 (¶ 9). The contract, however, went further to state that the county engineer was to "insure the Contractor constructs, installs, and maintains the devices called for on the Traffic Control Plan." *Id.* at 627 (¶ 9). The Court of Appeals found no Mississippi case regarding whether a general contractor obtains liability through the oversight of safety standards. *Id.* at 627 (¶ 11). However, the court noted that, in some cases, it "can look beyond the contract to determine whether public policy requires recharacterization of the relationship to allow the injured party to recover." *Id.* at 628 (¶ 13) (quoting *Chisolm*, 942 So. 2d at 142 (¶ 10)). It went on to find that it would not serve public policy to impose liability on the county for addressing the issue of safety in its construction contracts. *Id.* at 629 (¶ 14). The court cited various cases to the same effect from foreign jurisdictions. *See Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999); *LaChance v. Michael Baker Corp.*, 869 A.2d 1054, 1058 (Pa.

Commw. Ct. 2005); ***Ross v. Dae Julie, Inc.***, 793 N.E.2d 68, 72 (Ill. App. Ct. 2003); ***Jevons v. State***, 2003 WL 1986977, 116 Wash. App. 1056 (Wash. Ct. App. 2003).

¶20.    ***Chisolm*** and ***Hodges*** both evidence a stronger amount of control on the part of the governmental body over the respective contractors than is present in the instant case. However, both cases concluded that the relationship in question was that of an independent contractor.    Therefore, as to the instant case, the amount of control demonstrated by Plaintiffs, standing alone, is insufficient to trigger the master-servant relationship.

¶21.    Additionally, we find it appropriate to discuss two sub-issues, which we asked the parties to address in their supplemental briefs: (1) whether the existence of an enforceable contract is a prerequisite for the existence of independent-contractor status and (2) whether the contract, if any, between the City and Phillips was void and unenforceable as a matter of public policy because it was formed in violation of Mississippi Code Section 31-7-13.  These two sub-issues dovetail each other, because, as the ***Richardson*** factors quoted above demonstrate, the existence of a formal contract is but one factor in establishing independent-contractor status.  ***Richardson***, 631 So. 2d at 148-49.  In other words, though an important factor, the existence of a formal contract is not a prerequisite for a finding of independent-contractor status.

¶22.    As to any potential violation of the bidding requirements, Phillips correctly notes that judicial precedent in Mississippi has long held that "public boards speak only through their minutes and their actions are evidenced solely by entries on the minutes."  ***Thompson v. Jones County Cmty. Hosp.***, 352 So. 2d 795, 796 (Miss. 1977).  Because the potential bidding requirements cited by Phillips require an examination as to what is and is not contained in

11

the City's board minutes, the Court is unable to hold that a violation even occurred, as the board minutes are not in the record before the Court. *See* Miss. Code Ann. § 31-7-13 (Supp. 2014). Even considering, *arguendo*, that Phillips conclusively established a bidding violation, such a violation does not necessarily render the resulting contract void: "Any failure by the Board in this case to comply with the requirements of the bid purchase statutes constitutes at most a technical defect in the bid-letting process which did not render the resulting contract to [the defendant] void." ***Huey Stockstill, Inc. v. Hales***, 730 So. 2d 539, 543 (¶ 16) (Miss. 1998). Moreover, even assuming, again *arguendo*, that the resulting contract was made void by the bidding statutes, the existence of a contract is but one factor to consider in establishing independent-contractor status. ***Richardson***, 631 So. 2d at 148-49. Thus, the issue of any potential violation of the bidding statutes is moot for the purposes of the case *sub judice*.

¶23. The dissent would rely upon a single factor, originally announced in ***Richardson v. APAC-Mississippi, Inc.***, 631 So. 2d 143, 150 (Miss. 1994), to hold that, despite otherwise being an independent contractor, Phillips should be treated as an employee. In ***Richardson***, we announced a new factor in the balancing test we employ to determine the nature of an employment relationship for *respondeat superior* purposes.

> When a contract is made between two parties that as between themselves creates an independent contractor relationship and involves employment generally performed under a simple master/servant or employer/employee relationship, it will be upheld as between the parties. When, however, third parties are adversely affected, this Court will carefully scrutinize the contract to see if public policy should permit the transformation of an ordinarily employer/employee relationship into that of an independent contractor. A necessary condition precedent for the application of this factor, however, is that the party challenging the claimed relationship will be adversely affected,

12

and denied an adequate legal remedy. In the absence of this, the right of parties to contract as they please is a constitutionally-protected right.

*Id.* We decline to apply the *Richardson* factor to convert Phillips's independent-contractor status because Plaintiffs never presented the argument to the trial court for consideration. "[A] trial court will not be put in error on appeal for a matter not presented to it for decision." *Harrington v. Office of Miss. Sec'y of State*, 129 So. 3d 153, 169 (¶ 40) (Miss. 2013).

¶24. The grant of summary judgment was appropriate as to the issue of whether a master-servant relationship was formed in this case. Phillips hired and supervised its own employees, rented its own equipment, and performed its work on the project without much supervision from city employees. The evidence relied upon by Plaintiffs to infer that the City was involved at the planning stage is not competent summary judgment evidence, nor is that sufficient involvement to infer a master-servant relationship. Therefore, we affirm the trial court's grant of summary judgment on the vicarious liability issue.

II. **Whether the circuit court erred by dismissing Plaintiffs' negligent hiring and *per se* negligence claims by ruling that the City has no liability under Mississippi Code Section 31-5-51(7).**

¶25. Plaintiffs assert that the City was *per se* negligent because it violated Mississippi Code Section 31-5-51(7). To prevail on a negligence *per se* claim, "a party must prove that he was a member of the class sought to be protected under the statute, that his injuries were of a type sought to be avoided, and that violation of the statute proximately caused his injuries." *Snapp v. Harrison*, 699 So. 2d 567, 571 (¶ 22) (Miss. 1997) (citing *Thomas v. McDonald*, 667 So. 2d 594, 597 (Miss. 1995)). Section 31-5-51(7) requires parties entering into a construction or public works contract with a municipality to furnish proof of general liability

13

insurance coverage if the contract exceeds $25,000.  Miss. Code Ann. § 31-5-51(7) (Rev. 2010).

¶26.   The contract between the City and Phillips for the completion of the project did not exceed $25,000.  The City's Director of Operations testified that, at the time of contracting, he estimated the cost of the project to be approximately $6,000, which is well below the $25,000 threshold.  The invoice Phillips submitted to the City was for $9,678, also well below the amount needed for the statute to apply.  The amount that the City ultimately paid another construction company, which has no relation to Phillips, is irrelevant.  Because Hill cannot show he was a member of the class sought to be protected by Section 31-5-51(7), we affirm the trial court's finding that the City was not liable under this statute.

¶27.   To address Plaintiffs' arguments in full, we note that, even if the statute applied to this agreement, the City would not be liable because the statute places the burden on the contractor to furnish the insurance, not on the City to make sure that the insurer does so. *Pidgeon Thomas Iron Co. v. Leflore County*, 135 Miss. 155, 99 So. 677, 679 (1924). Plaintiffs suggest that the Court should not apply *Pidgeon Thomas* because that judgment was rendered in 1924 and did not involve a death, unlike the instant case.  However, *Pidgeon Thomas* is still controlling precedent, and even though the instant case involved a death, there is no reason the Court should make an exception.

¶28.   Further, Plaintiffs have not established that there was legislative intent to create a private cause of action under which they may sue the City under Section 31-5-51.  The Court will not find a private cause of action when there is no apparent legislative intent to establish one. *Tunica County v. Gray*, 13 So. 3d 826, 829 (¶¶ 16-17) (Miss. 2009) ("Unless the

14

legislative intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist."). As the party asserting a right of action, Plaintiffs have the burden of establishing the required legislative intent. *Id.* at 829 (¶ 16). Plaintiffs claim that the legislative intent behind Section 31-5-51(7) was to prevent physical injuries of the kind they suffered, but they cite no authority to support that claim.

**Conclusion**

¶29. The trial court correctly granted the City's motion for summary judgment. Regarding vicarious liability, there is no genuine issue of material fact because Plaintiffs have not shown that the City exercised more than a supervisory role over the project, which is not sufficient to trigger a master-servant relationship. As to Mississippi Code Section 31-5-51(7), the City provided proof that the contract was for less than $25,000, so the statute does not apply. The Court's finding that the trial court's grant of summary judgment was proper on the aforementioned issues is dispositive, and we decline to address the discretionary function immunity issue. Accordingly, we affirm the trial court's grant of summary judgment in favor of the City.

¶30. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J. LAMAR, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, DISSENTING:**

¶31. Under the majority's holding, an injured worker and a bereaved wife and daughter are denied any possibility of relief. Because I believe that our law ought to, and does, grant relief

15

in this unusual situation, and because the ramifications of the majority's decision would tend to encourage reckless and irresponsible dealings between governmental entities and their contractors, I respectfully dissent.

¶32. It is undisputed that, without their being able to sue the City, David Mooneyhan's surviving wife and daughter, along with Bertram Hill, will be barred from compensatory relief of any kind. Phillips, the contractor, did not have workers' compensation insurance[2] or general liability insurance, and is, effectively, judgment proof. Nevertheless, the majority holds that Phillips was an independent contractor of the City of Horn Lake ("the City"), without consideration of an important element of a legitimate, and, I believe, appropriate, common law analysis of such a relationship which would allow this Court to recharacterize the relationship between Phillips and the City. "Even if a contract clearly evinces the parties' settled intent to create a principal-independent contractor relationship, when a third party is adversely affected, this Court can look beyond the contract to determine whether public policy requires recharacterization of the relationship to allow the injured party to recover." *Chisolm v. Miss. Dep't of Transp.*, 942 So. 2d 136, 142 (¶ 10) (Miss. 2006). While such a power initially may seem extreme, the Court was careful to note that it could do so only where "the party challenging the claimed relationship will be adversely affected, *and denied an adequate legal remedy*." *Richardson v. APAC-Mississippi, Inc.*, 631 So. 2d 143, 150 (Miss. 1994) (emphasis added).

---

[2]The appellants' brief informs us that Hill and Mooneyhan were "the only two (2) employees of Phillips" when the accident occurred. Phillips, the contractor, employed fewer than five people, and thus was not required by law to carry workers' compensation insurance. *See* Miss. Code Ann. § 71-3-5 (Rev. 2011).

16

¶33. The majority's unwillingness to analyze the ***Richardson*** public policy factor due to the plaintiffs' failure to present the argument to the trial court[3] is incorrect in light of the fact that the factor is but one of several implicit in the balancing test used to determine independent-contractor status. The Court in ***Richardson*** clearly explained that the policy consideration factor, which I find dispositive in the case before us, was "another factor in the balancing test. . . ." ***Richardson***, 631 So. 2d at 150. Accordingly, when the trial court determined that Phillips was an independent contractor of the City without analyzing an important factor in the balancing test, the trial court committed error. This was not some extra consideration that the plaintiffs were required to argue before the trial court, but a factor implicit in the consideration of independent-contractor status that the trial court was bound to consider. The trial court erred as a matter of law, and we are well within our purview to review that error.

¶34. The availability of other avenues for relief to a plaintiff has been a factor that this Court often has considered in finding an independent-contractor relationship. In ***Richardson***, the Court found that the plaintiff never claimed that relief was unavailable from the independent contractor and, in fact, had entered into a settlement with the independent contractor's insurance carrier. ***Id.*** at 151. In ***Chisolm***, we held that "[a]pplication of the 'public policy' factor [was] unwarranted[,]" because the plaintiffs, after being denied relief

---

[3]This itself is debatable. In the hearing on the motion for summary judgment, while arguing about Phillips's failure to provide proof of insurance, counsel for the plaintiffs stated, "Phillips had no insurance, and these Plaintiffs had *absolutely no remedy* for the wrongs that have occurred to them if this is allowed to proceed otherwise." (Emphasis added.)

17

against the Mississippi Department of Transportation, settled with the independent contractor involved and dismissed it from the case. ***Chisolm***, 942 So. 2d at 142 (¶ 11). Therefore, the plaintiffs in that case had an adequate remedy at law. The Court noted that the public policy factor "contemplates a situation where the plaintiff cannot get any recovery based on the principal-independent contractor shield." ***Id.*** As the plaintiff did obtain at least some relief in that case, the factor was irrelevant.

¶35.    The facts of this case, on the other hand, cry out for its application. One man is dead, leaving behind a wife and minor child, and another man is seriously injured. The only party who can be sued directly is, effectively, judgment proof, to say nothing of the fact that Phillips indisputably was egregiously negligent in digging this trench.[4] If the plaintiffs are prevented from pursuing civil actions against the City, they will have no hope of relief. This is "a situation where the plaintiff[s] cannot get any recovery based on the principal-independent contractor shield." ***Id.*** The majority pays lip service to this concept, but goes no further. Indeed, in this case, the callous indifference of the City in its failure to hire an insured contractor is the reason the plaintiffs have no viable path to relief. I would find that the complete lack of availability or even the possibility of a legal remedy to the plaintiffs allows this Court to recharacterize the relationship between Phillips and the City.

_____

[4]It is undisputed that Phillips was found to have violated several federal regulations, including having his employees work without hardhats, failing to provide cave-in protection for the trench, failing to train his employees to recognize the dangers of a cave-in, failing to secure the large tree next to the excavation which actually caused the cave-in, keeping the excavated dirt pile directly adjacent to the excavation, failing to place a ramp or ladder inside the hole for the workmen to use, and failing to shore up the walls of this seventeen-foot deep trench.

¶36. Moreover, the history of the City's dealings with Phillips reveals a lackadaisical approach to maintenance and construction contracts, with little oversight, or, it would seem, little motivation or effort on the City's part to see that Phillips conducted his business in a safe and responsible manner. In response to requests for admission, Phillips answered, "Phillips *had no written contracts* with [Horn Lake] for *any* projects performed by Phillips[.] Any projects were performed on a cost plus basis and invoiced when the project was completed." (Emphasis added.) One of those past projects was valued at $100,000. The history of slipshod contracting between Phillips and the City suggests that their interaction in the circumstances before us may be but one component of an established pattern of very informal conduct. Although the majority finds that the issue of any potential violation of the bidding statutes is moot, I believe that the City's potential violation of the bidding statutes, in light of its history with Phillips, weighs against a finding that there existed an independent-contractor relationship. If the City can be allowed to relax its compliance with the laws regarding contracts for public works projects, then the law's treatment of its relationship with its contractors ought to be relaxed as well.

¶37. Further, it must be noted that the very nature of "cost-plus" contracting renders any protections offered by Mississippi Code Section 31-5-51(7) meaningless. As stated by the majority, that section requires construction or public works contractors to provide proof of general liability insurance to the contracting municipality when the contract between the two exceeds $25,000. Miss. Code Ann. § 31-5-51(7) (Rev. 2010). Under a cost-plus contract, the two parties may contract for any amount they choose, and once costs have gone over that amount, the contractor may simply submit invoices to the municipality for any additional

19

costs. It is obvious that savvy contracting parties can sign a contract for an amount below the threshold value of $25,000, and thus avoid the requirements of Section 31-5-51(7), even where the actual cost of the work may greatly exceed that amount. Thus, municipalities and contractors can enter into a convenient "don't ask, don't tell" arrangement that shields both from liability under the statute, that ensures that contractors without insurance still get work, and that permits municipalities to give contracts to the lowest bidder without having to ask *why* the contractor can do his work so cheaply.[5]

¶38. By forbidding the plaintiffs' suit in this case, the majority–unintentionally, I am sure–incentivizes municipalities and other governmental entities to hire fly-by-night, uninsured contractors, knowing that the governmental entity, clothed with immunity, will bear no legal responsibility for injury or death caused by such a contractor's negligence, no matter how egregious or how devastating. As such operations often are the cheapest, there is little or no motivation for local governments to determine whether their contractors are solvent, insured, or competent. In fact, the incentive lies in the other direction. As such, uninsured contractors may remain more or less judgment proof, the only parties left bearing losses not of their own making are those injured by the negligent activities of such contractors. To put it simply, this is not fair.

---

[5]Of course, all of this is rendered moot by the majority's determination that the burden lies upon the contractor to provide proof of insurance, and not on the municipality to require that the contractor be insured. I reject that proposition as well. I can think of no reason why any principal should not have the burden of ensuring that any contractor it hires has sufficient general liability insurance, especially if the contractor is small enough not to be required to carry workers' compensation insurance.

¶39.   This Court should not ignore or be oblivious to the repercussions of the majority's decision. If it stands, the bereaved wife and daughter of David Mooneyhan will have no chance for a legal remedy for the grievous injury done them.[6] The injured Bertram Hill has no means of remediation of his injury. This factor should outweigh the other aspects utilized by this Court to determine the relationship between Phillips and the City. When a principal hires an independent contractor to do dangerous work, without determining whether that contractor has the ability to compensate persons who may be injured, and doing so completely denies relief to injured parties, this Court should recharacterize the relationship to allow relief. The language of our precedent, as enshrined in ***Chisolm*** and ***Richardson***, and justice itself, demand such a process.

¶40.   Let us not forget: this was a terrible tragedy. A family was destroyed. David Mooneyhan, a working husband and father, was buried alive and crushed to death at the bottom of a sewage pit. His wife and daughter will receive no compensation for their loss. Bertram Hill was buried alongside Mooneyhan, close enough to touch his head with his hand. He heard Mooneyhan gasping for breath until he died. Hill remained buried for several hours until rescuers reached him. He will receive no compensation for his injuries. The City of Horn Lake had orally contracted with an uninsured contractor to perform dangerous sewage system work. Phillips, the contractor, did not have to account for either workers' compensation insurance or general liability insurance in his overhead costs, and so was able

---

[6]Mooneyhan was being paid ten dollars per hour for his work for Phillips. Without his income, where are his wife and daughter to turn? Will it be the taxpayers of this State who help to support them?

to perform this work relatively cheaply. The City of Horn Lake either did not know or did not care that Phillips was uninsured. A husband and father is dead, another man is seriously injured, and the city that hired an uninsured, negligent contractor without regard to the contractor's insurance coverage won't have to pay a dime. The majority's conclusion is utterly devoid of justice.

¶41. I would reverse the trial court's grant of summary judgment and remand for a trial against the City of Horn Lake. The majority ignores a vital component of our common law jurisprudence on the principal-independent contractor relationship. This Court has stated plainly that, where the plaintiff cannot obtain relief due to "the principal-independent contractor shield," then we may recharacterize the relationship in the interest of public policy. *Chisolm*, 942 So. 2d at 142 (¶ 11). I find this factor to be dispositive. The City hired someone who violated federal regulations and failed to maintain insurance against the possibility of his conduct's hurting someone. The majority would incentivize the repeat of such behavior, as there is no liability for the City of Horn Lake for acting as it did.

¶42. The justices who comprise the majority are honorable and dedicated public servants who did not set out to create such an untoward and malevolent outcome in the lives of the innocent victims of this tragedy. Nevertheless, the outcome, in my view, is unnecessarily harsh and it is altogether unjust, so much so that I am unable to concur in it, especially when Mississippi law, as outlined above, provides a path toward a legitimate legal remedy for the victims. I therefore respectfully dissent.

**KING, J., JOINS THIS OPINION.**